No. 80-349

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

———————

DEAN GRAHAM,

Plaintiff and Appellant,

vs.

CLARKS FORK NATIONAL BANK, a Montana
Corporation, and RAYMOND L. MIRABAL,

Defendant and Respondent.

———————

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Carbon.
Honorable William J. Speare, Judge presiding.

Counsel of Record:

For Appellant:

Swandal, Douglass & Swandal, Livingston, Montana
Kent Douglass argued, Livingston, Montana

For Respondent:

Joseph E. Mudd argued, Bridger, Montana

———————

Submitted:  June 18, 1981

Decided:  July 22, 1981

Filed:  JUL 2 2 1981

*Thomas J. Kearney*
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This is an appeal from an order of the District Court which set aside a jury award as excessive and granted a new trial limited to the issue of damages arising from the wrongful conversion of cows belonging to the appellant, Dean Graham.

In the spring of 1978, Graham was the owner of 19 registered angus cows which he planned to breed by artificial insemination. They were pastured with cows belonging to one Marvin Heyd. Graham, a full-time employee of a telephone company, and Heyd, an experienced rancher and breeding specialist, had earlier agreed that Heyd would manage the care and artificial insemination of Graham's cows in exchange for pasture fees or a portion of the calves produced. Fourteen of Graham's cows bore his registered brand. The remaining five were with calf and retained another brand of a previous owner. During this period, the respondent, Clarks Fork National Bank (Bank) held a security interest in Heyd's cattle. The Bank was not aware that Graham's cows were in the same pasture.

On June 15, 1978, the Bank sent notice to Heyd of their intention to seize the secured cows. The following morning the Bank's agents went to the pasture and loaded the cows, including those belonging to Graham. They were taken by truck to a pasture 30 miles away. Several days later the Bank ran a brand check and discovered they had Graham's cows.

Graham first learned of the seizure several days later and immediately demanded their return. The Bank refused to return them without further evidence of ownership or to

inform him of their location. Heyd and the Bank subsequently renegotiated their security agreement and after additional title documents were produced, all the cows were returned on June 29, 1978, to a second ranch leased by Heyd. Although Graham told the Bank he should be consulted regarding the return of his cows, he was not notified prior to their return.

When Graham examined his cows on July 1, he found six bulls in the same pasture. He determined his planned artificial insemination program for 1978-1979 had been destroyed. The cows remained in the pasture through the summer and fall of 1978.

Several months after the cows were returned, Heyd defaulted on the renegotiated agreement with the Bank. The Bank's agents returned to the pasture on October 5, 1978, and drove all the cows to a corral approximately 300 yards away. Graham's cows were separated from the herd and returned to the pasture.

Graham subsequently instituted a suit in conversion and sought compensation for damages as follows:

1. Wrongful trespass and conversion for the first removal in the amount of $20,175.

2. Future losses resulting from the destruction of his artificial insemination program in the amount of $133,200.

3. Exemplary damages of $50,000.

4. General damages for the second conversion in the amount of $2,000.

During trial, the court sustained the Bank's objection to expert testimony offered to prove the value of a hypothetical purebred angus calf crop and granted the Bank a directed verdict on the claim for future damages. The court further granted the Bank's motion for a directed verdict on

-3-

exemplary damages. By special verdict the jury found all cows taken had been returned, but that a reduction in value between June 16 and June 29 had occurred in the total amount of $1,425. The jury further found that Graham suffered general damages as the result of the Bank's second seizure of the cows in the amount of $1,000 and found that Graham was entitled to recover $1,050 as a reasonable amount in regaining possession of the cattle. The jury also returned a general verdict for $50,000, although future calf crop losses and exemplary damages had been removed from their consideration.

This appeal presents three issues for review. First, whether the District Court properly granted a new trial on damages. Second, whether the District Court erred in granting a directed verdict on the issue of future calf crop losses. Third, whether the directed verdict on punitive damages was error. We hold the granting of a new trial was proper, however, on retrial, Graham should be allowed to present his expert testimony on future calf crop losses and the claim of exemplary damages should be submitted to the jury.

The statutory damages for conversion are stated in section 27-1-320, MCA.

> "(1) The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> "(a) the value of the property at the time of its conversion with the interest from that time or, when the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict without interest, at the option of the injured party; and
>
> "(b) a fair compensation for the time and money properly expended in pursuit of the property.
>
> "(2) The presumption declared by subsection (1) cannot be repelled in favor of one whose possession was wrongful from the beginning by his subsequent application of the property to the benefit of the owner without such owner's consent."

The District Court disallowed any elements of damage not expressly provided for under the statute. In Ferrat v. Adamson et al. (1917), 53 Mont. 172, 181, 163 P. 112, this Court interpreted the statute's language:

". . . The presumption announced is a disputable one, and may be overcome by evidence that by reason of the peculiar circumstances surrounding the property greater or less injury results from its wrongful conversion than the statute contemplates; but in the absence of proof of such special circumstances the statutory rules govern . . ."

The District Court sustained the Bank's objections to expert testimony regarding the value of a hypothetical purebred angus calf crop. The ostensible reason given was the testimony lacked foundation and was too speculative. This was error. Sufficient foundation was laid for the expert's testimony regarding future calf crop losses. This kind of testimony is necessarily speculative to some degree, but this Court has recognized and sanctioned such testimony although speculative in nature. See Frisnegger v. Gibson (1979), ___Mont.___, 598 P.2d 574, 582, 36 St.Rep. 1335.

". . . Section 27-1-203, MCA (formerly section 17-203, R.C.M. 1947) provides that damages may be awarded in a judicial proceeding for detriment resulting after the commencement thereof 'or certain to result in the future.' While no case in Montana has construed this statute, it has always been the practice in Montana to instruct juries that future damages need only be reasonably certain, and not absolutely certain as the statute seems to imply. In holding, as we do, that future damages need only be reasonably certain under the evidence, it must be granted that in determining an award for future damages, a jury, or an expert testifying on the subject, must to some degree engage in conjecture and speculation. When the conjecture and speculation is based upon reasonably certain human experience as to future events, the jury or trier of fact is entitled to rely on that degree of reasonable certainty in fixing and awarding future damages. From that viewpoint, since no man has the gift of knowledge of the future, it is possibly less confusing to a jury, given the task of determining future damages, to be instructed that it may not rely 'solely' on speculation or conjecture, but may utilize the reasonable certainty the evidence presents with respect to those damages. We do not

read into the instruction as given that the jury could base its award 'partially' on speculation or conjecture; rather the instruction fairly plainly tells the jury that it should compensate the plaintiff for loss or harm which is 'reasonably certain' to be suffered by him in the future. We do not see that a jury could hear those words without realizing that it was to look to the evidence for reasonable certainty on the subject. We find no error in the instruction as given." (Emphasis added.)

The final issue is whether the evidence supported a jury issue on punitive damages, /under section 27-1-221, MCA. We have carefully reviewed the record and find sufficient evidence to justify submission of the issue of punitive damages to the jury. In Klind v. Valley County Bank (1924), 69 Mont. 386, 399, 222 P. 439, 444, we stated the general rule respecting punitive awards:

> "'To warrant the recovery of such damages the act complained of must not only be unlawful, but must also partake somewhat of a criminal or wanton nature. And it is an almost universally recognized rule that such damages may be recovered in cases, and only in such cases, where the wrongful act complained of is characterized by some such circumstances of aggravation as willfulness, wantonness, malice, oppression, brutality, insult, recklessness, gross negligence, or gross fraud on the part of the defendant. (8 R.C.L. 585, 586.)'"

We find the following facts in evidence justified the submission of punitive damages to the jury under the "recklessness" standard of Klind and section 27-1-221, MCA. The Bank seized Graham's cows which carried brands establishing prima facie ownership in someone other than the Bank's debtor and moved them 30 miles away. When Graham attempted to recover his cows, the Bank adamantly refused to divulge their location and returned his cows to a pasture with six unregistered bulls. In our opinion there was sufficient evidence to raise an issue for the jury's consideration.

This cause is hereby remanded for a new trial in accordance with this opinion.

_____
                Justice

-6-

We concur:

_____
Chief Justice

_____

_____

_____
Justices