MR. JUSTICE WEBER
dissents as follows:
I do commend the author of the majority opinion for his attempt to prescribe a standard for presumed malice in punitive damage cases. I agree that our cases have not set forth clear guidelines for future litigation.
I dissent because of my belief that the application of the standard in the present case has reached an unjust result. Perhaps that is a result of applying a physical safety standard to a discrimination case. See Restatement of the Law Second, Torts Section 500, entitled “Reckless Disregard of Safety.”
The record in this case shows that the safety director of Parker Drilling Co. formulated guidelines for hiring and firing personnel and that these guidelines were posted in the “doghouse” on the drilling rig. The physical requirement guidelines for the job of “roughneck” are as follows:
“In order to reduce the possibility of injuries on-the-job to an employee or injury to fellow employees caused by an employee’s physical impairment, Parker Drilling Company has set out the following minimum physical standards for all new employees working in the field operations on the drilling rigs.
*455 “Minimum Height - 5’6”
“Minimum Weight - 130 lbs.
“Minimum Vision with or without corrective glasses - 20/ 30 in each eye.
“Minimum Hearing - 15/20 in each ear.
“Blood Pressure - within normal limit for age of the individual.
“No History of Heart Condition.
“No History of Acute Diabetic Condition.
“No Congenital Deformity of the Back or Previous Back Surgery.
“No Hernia or Previous Hernia Surgery.
“No Severe Disabilities or Impairments to Arms, Hands, Fingers, Legs, Feet and Toes.”
Plaintiffs application for employment with the defendant company contained the following questions:
“Do you have any cronic [sic] illnesses or known medical limitations? Yes_No_If yes, explain:”
Plaintiff did not mark the “No” or otherwise mention in his application that his right hand and a portion of his arm were missing.
The reasons for the discharge of the plaintiff are described in the deposition of the operation’s manager of Parker Drilling. In pertinent part he stated:
“Q. What else were you told by either one of these gentlemen?
“A. I was told that he had only one arm, and that they felt that he was a safety hazard as far as to himself, the other crew members. And they wanted my advice as to whether or not they should fire him because of the possibility that he - suing us. My answer to that was, yes, our policy was that we had to let him go because of our requirements, and that if they felt like he was a safety hazard, by all means let him go.

6t

“Q. What are the other reasons, then, why he was fired?
“A. During the conversation on the telephone with either *456 Mr. Carter or Heistad [tool pushers on the rig], they, in addition to him having only one arm and then feeling that he was a safety hazard, as far as to himself and the other crew members, that he was not a good worker and was not performing his duties properly.
“Q. And what specifically was he not doing with regard to doing his duties or doing his job?
“A. They told me that they - he was not checking the engine oil and the water in the radiators, and that he was asked to do. And that the crew that was following him had found that the engines were several gallons low on oil after he was relieved, and that the - therefore he wasn’t checking his engines properly.”
The depositions of the operation’s manager and one of the tool pushers (manager on a drilling rig) established that, in a combined 30 years of experience working in the oil fields, neither had ever seen anyone with an arm missing working as a roughneck or a driller on an oil rig.
It is also significant to note that plaintiff concludes he is entitled to punitive damages simply because of the fact of his being discharged. He does not contend that there was any wrongful, willful or intentional contract specifically directed at him. A key element of the majority opinion is the conclusion that failure to investigate into the capacity of the plaintiff could be found to be recklessness. That conclusion is subject to factual question.
In determining whether or not there has been discrimination, all of Section 49-4-101, MCA must be considered, including the following pertinent part:
“Discrimination prohibited. It is unlawful to discriminate, . . . There is no discrimination where the nature or extent of the handicap reasonably precludes the performance of their particular employment or where the particular employment may subject the handicapped or his fellow employees to physical harm.”
Under the specific provisions of the statute, there is no discrimination in this case if the nature of the plaintiff’s *457 handicap, that being a missing hand and part of his arm, reasonably precluded the performance of his job as a roughneck in the oil field. In addition, there is no discrimination if that same handicap might subject the handicapped person or his fellow employees to physical harm. The wording of the statute allows the type of physical requirements which were adopted by the defendant employer for the hazardous work upon an oil rig. While the facts do demonstrate that the plaintiff has worked successfully on an oil rig notwithstanding his handicap, he is quite unique. The record does not indicate others have successfully met that test. Common sense tends to accept the testimony of the two persons, who in more than 30 years experience had never seen another one-armed man working on drilling rigs.
In this instance, the handicap of the plaintiff is such as to present a real possibility of physical harm to either the plaintiff or his fellow employees. This exception is explicitly contemplated by the statute as a basis for concluding there has been no discrimination.
As I reviewed the cases cited in the majority opinion, I concluded that a common denominator of the Montana cases was some type of intentional conduct or harm on the part of the person charged with conduct justifying punitive damages. This is clearly set forth in Shahrokhfar u. State Farm (Mont. 1981), 634 P.2d 653, 657, 38 St.Rep. 1669, 1673, where the Court stated:
“Next, appellant alleges error in submission of punitive damages claiming insufficient evidence of reprehensible conduct on the part of State Farm. This contention is disposed of in Graham v. Clarks Fork Nat. Bank (1981), Mont., 631 P.2d 718, 38 St.Rep. 1140. In the Graham case we found sufficient evidence to justify the submission of punitive damages from the following facts: (1) The defendant had seized plaintiff’s cows, mistakenly thinking they belonged to a bank debtor; and (2) when the plaintiff attempted to recover his cows, the bank adamantly refused to divulge their location and thereafter returned them to the *458 wrong location. We held that such facts raised an issue for the jury’s consideration of punitive damages under the ‘recklessness’ standard enunciated in Klind v. Valley County Bank (1924), 69 Mont. 386, 222 P.2d 439. In this case State Farm sued the wrong person and though advised of its mistake, refused to make a correction. As in Graham, these facts are sufficient for the jury to determine that State Farm acted recklessly and that it be subject to the sanction of punitive damages.”
In the Graham case, the bank had seized cows and refused to divulge the location or to return them. The cows were branded with the brand of the person claiming ownership, not the bank’s alleged debtor. That is clearly a form of intentional conduct aimed at the plaintiff. In a similar manner in Shahrokhfar, the insurance company sued the wrong person and though advised of its mistake, refused to make a correction. Again there is intentional conduct specifically aimed at the plaintiff. This does not mean that punitive damages are limited to situations where a tortfeasor intentionally acts to harm a particular plaintiff. However, I would affirm the universally recognized rule that to warrant recovery of punitive damages, the act complained of must not only be unlawful, but must also be characterized by some circumstance of aggravation. See Allers v. Willis (Mont. 1982), [197 Mont. 499,] 643 P.2d 592, 596, 39 St.Rep. 745, 750. In the present case, plaintiff in substance contends that the adoption of a written policy prohibiting hiring of workers who fail to meet minimum physical requirements, without specifically testing each applicant’s individual capacity to perform constitutes recklessness. I do not find the cited cases good authority for the conclusion.
While it may be contended that the employment regulations of the defendant are subject to some question, the record does not disclose a reckless action and unreasonable disregard or indifference to a risk of harm to the plaintiff.
Under the majority’s rationale, each person not meeting the minimum physical qualifications for the job must be *459 tested individually to determine whether he had unique capabilities. An employer could be liable for punitive damages for not investigating past review of the job application, even if refusal to hire reasonably protected the handicapped and his fellow employees from physical harm. Respondent’s employment standard appears to be specifically sanctioned under Section 49-4-401, MCA. I would therefore affirm the District Court in its holding that the Court was precluded from submitting the question of punitive damages.
The Honorable ROBERT M. HOLTER, District Judge, sitting in place of MR. JUSTICE GULBRANDSON, joins.