478 A.2d 858

**Rodney W. KINTNER, Appellant**

v.

**CLAVERACK RURAL ELECTRIC CO-OPERATIVE, INC.**

**Rodney W. KINTNER**

v.

**CLAVERACK RURAL ELECTRIC CO-OPERATIVE, INC., Appellant.**

**Rodney W. KINTNER, Appellant**

v.

**CLAVERACK RURAL ELECTRIC CO-OPERATIVE, INC.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1983.

Filed July 13, 1984.

**2.** Appellant does not allege that counsel was ineffective in failing to request a cautionary instruction.

418

Laurence M. Kelly, Montrose, for Kintner, appellant (at Nos. 1342 and 1559) and appellee (at No. 1558).

Lucille Marsh, Scranton, for Claverack, appellant (at No. 1558) and appellee (at Nos. 1342 and 1559).

Before SPAETH, President Judge, and CIRILLO and JOHNSON, JJ.

SPAETH, President Judge:

■ These appeals arise from a trespass action by Rodney W. Kintner against Claverack Rural Electric Co-Operative, Inc., to recover damages for the loss of 14 dairy cows electrocuted when some power lines came down during a storm, on June 5, 1979. The jury returned a verdict for Kintner of $31,000. Both parties moved for judgment n.o.v. or a new trial. Claverack's motions raised issues of both liability and damages; Kintner's motions raised only issues of damages. The trial court dismissed both parties' motions, but remitted $8,250 of the verdict, holding that it had

improperly charged the jury on damages for lost profits and unborn cattle. Both parties appealed.[1] We affirm.

–1–

■ In support of its motion for judgment n.o.v., Claverack argues that the evidence of its negligence was insufficient. In considering a motion for judgment n.o.v., the evidence must be viewed in the light most favorable to the verdict winner. *Sperrazza v. Cambridge Mutual Fire Ins. Co.*, 313 Pa.Super. 60, 459 A.2d 409 (1983). So viewed, the evidence was as follows.

■ During a storm, part of a tree fell on power lines maintained by Claverack, bringing the lines into contact with each other. They burned through, and fell onto Kintner's cows, electrocuting them. N.T. 55–56. Kintner's expert, Willard Kresge, testified that several feasible precautions would have prevented the accident: trimming the trees; insulating the wires; using a heavier gauge wire; using higher poles; using a different method of attaching the wires, known as spacer-type construction; and installing a circuit breaker. N.T. 87–100. Kresge also testified that industry standards required trimming trees that might interfere with the lines, or insulating the wires where trimming was impractical. N.T. 71–74, 87–92.

Claverack, as a supplier of electricity, was required to exercise the highest degree of care practicable. *Karam v. Pa. Power & Light Co.*, 205 Pa.Super. 318, 208 A.2d 876 (1965). On the basis of Kintner's testimony, the jury could find that Claverack had not taken a feasible precaution and that this failure caused the loss of Kintner's cows. The trial court therefore properly denied Claverack's motion for judgment n.o.v.

■ In support of its motion for new trial, Claverack argues that the trial court should not have read several of

1. The appeal at No. 1342 Philadelphia 1982 was taken by Kintner before final judgment had been entered. Therefore, this appeal is quashed. Pa.R.A.P. 301(a). Kintner's appeal at No. 1559 Philadelphia 1982 was taken after final judgment was entered.

Kintner's points for charge to the jury because the points misstated the law and facts. Specifically, Claverack argues that the points incorrectly assumed that the failure to take a particular precaution was a violation of industry standards, and misstated the testimony on whether the reclosure device malfunctioned. However, Claverack has not preserved these arguments, for it did not make them at trial. *See Crosbie v. Westinghouse Elevator Co.*, 297 Pa. Super. 304, 443 A.2d 849 (1982); *Rosato v. Nationwide Ins. Co.*, 263 Pa.Super. 340, 397 A.2d 1238 (1979). Particularly will waiver be found when the error alleged is a factual misstatement that could have been easily corrected had it been called to the trial court's attention. *Rodgers v. Yellow Cab Co.*, 395 Pa. 412, 147 A.2d 611 (1959). Claverack did argue at trial, and argues to us, that the jury could have understood that it was *required* to conclude that each of the precautions was reasonable, and that not having taken any was negligence. This argument is without merit. The jury was instructed that a breach of the highest duty of care was a *permissible* finding if it found that Claverack had failed to take one of the enumerated precautions and found causation ("... then you *may* find...."). This charge was not inaccurate, misleading or confusing.

▮ Also in support of its motion for new trial, Claverack argues that several statements made during Kintner's closing argument were improper and prejudicial. Again, this argument has not been preserved. Counsel did not object during closing and ask to have the relevant remarks stenographically recorded. We therefore have no record to review. *Johnson v. O'Leary*, 277 Pa.Super. 223, 419 A.2d 742 (1980).

–2–

Kintner testified that the 14 cows had an average market value of $1,650 and that he had received $350 in salvage, for a net loss of $22,750. He argued to the trial court, and argues on appeal, that he was entitled in addition to damages for lost profits. N.T. 15–16. He identified several

exhibits as showing that his milk production dropped after the accident. N.T. 19–24. He also attempted to show that before the accident his production had increased by a certain percentage, and to use that percentage to increase the difference between expected and actual production after the accident, thereby increasing his lost profits. The trial court admitted the evidence showing the drop in production, but not the evidence in support of the claimed percentage increase. N.T. 23, 139.

The jury's verdict was for $31,000. The trial court remitted the verdict to $22,750, *i.e.*, the fair market value of the cows, explaining in its opinion that "one who receives the full value of a chattel destroyed through the negligence of another ordinarily cannot recover for the value of the use thereof after it was destroyed." Slip op. at 8 (citations omitted).[2] Both parties argue that the trial court erred. Kintner argues that damages for loss of use are proper and that the jury's verdict should be reinstated. He also argues that the evidence about his expected production increase should have been admitted and that this error warrants a new trial limited to damages. Claverack argues that the remittitur was not appropriate because the issues of liability and damages were inseparable, and that therefore it should be granted a new trial, on both liability and damages.

■ Pennsylvania law allows recovery of damages for the loss of use of personal property when the property is repairable. *Holt v. Pariser*, 161 Pa.Super. 315, 54 A.2d 89 (1947); *Koren v. George*, 159 Pa.Super. 182, 48 A.2d 139 (1946); *see* Restatement of Torts § 928. We find no Pennsylvania appellate decision on the question of the recovery of damages for loss of use when the property has been completely or substantially destroyed; several trial courts

---

2. The jury was also instructed that it could award damages for unborn cattle. The trial court later ruled that this instruction was improper. Kintner does not argue on appeal that this ruling was error.

have held that such damages are not recoverable.[3]  Some jurisdictions permit recovery only when the property is repairable.  *E.g., Joe Sartain Ford v. American Indem. Co.,* Ala., 399 So.2d 281 (1981); *Skinner v. Scott,* 238 La. 868, 116 So.2d 696 (1959); *Hayes v. Freight Lines, Inc. v. Tarver,* 148 Ohio St. 82, 73 N.E.2d 192 (1947).  Others, however, permit recovery as well when the property has been destroyed.  *See Allanson v. Cummings,* 81 A.D.2d 16, 439 N.Y.S.2d 545 (1981), and cases cited therein.

■■■  The rule denying recovery seems to be based on the idea that the plaintiff has been made whole upon receiving the full market value of the property as of the date of destruction and has the presumed ability to enter the marketplace and purchase a replacement.  *Id.* at 18–19, 439 N.Y.S.2d at 547.  This reasoning has been found unpersuasive by the Court of Appeals for the Third Circuit in the case of *Dennis v. Ford Motor Co.,* 471 F.2d 733 (3rd Cir.1973):

> The latter approach [permitting recovery] represents more modern thinking, and it is the position which we believe a Pennsylvania appellate court would adopt if faced with this issue.  Damages are supposed to compensate the injured person for the wrong which has been done to him.  *Guido v. Hudson Transit Lines, Inc.,* 178 F.2d 740 (3d Cir.1950); Restatement of Torts, § 910.  Consequently, this Court fails to see any logical or practical reason for a distinction between repairable and unrepairable damage to a commercial vehicle which would justify loss of use for the former and not the latter even though the owner suffers loss because he cannot immediately replace the vehicle.  In both instances the owner has lost the same thing, the use of his vehicle, and he should be able to recover this loss of use in either case.
> *Id.* at 736.

**3.**  *Cowher v. Dornhaffer,* 47 Pa.D & C 2d 190 (1969); *Flint v. Fosnaught,* 5 Pa.D & C 2d 423 (1955); *Dixon v. Priester,* 85 Pa.D & C 109 (1952). *Contra Nelson v. Johnson,* 55 Pa.D & C 2d 21 (1970).

We agree with the Third Circuit, and hold that damages for the loss of use of personal property are recoverable whether or not the property is repairable.[4]

■■■■ It does not follow from this conclusion, however, that Kintner was entitled to recover damages for the loss of use of his cows. One claiming loss of use damages when the property is repairable must show that the method of repair and the time taken to make the repair were reasonable. *Holt v. Pariser, supra.* Similarly, one claiming loss of use damages when the property is not repairable must show that the method of acquiring a replacement for the property and the time taken for the replacement were reasonable. *Reynolds v. Bank of America National Trust & Savings Ass'n.*, 53 Cal.2d 49, 345 P.2d 926 (1959); *Long v. McAllister*, Iowa, 319 N.W.2d 256 (1982). Kintner did not make this showing. He testified that he had chosen to replace the cows by raising others from his herd. N.T. 44. However, he also testified that he could have replaced the cows within three days if he had paid $1,800 each, although it would "probably [have] take[n] all fall unless you went far away," N.T. 46, to have replaced them at $1,650. Finally, he testified that a cow is not milked until it is two to three years old. N.T. 41. Thus, whatever loss of use damages Kintner suffered was self-inflicted in that it could have been readily avoided by replacing the cows promptly by buying mature cows.[5] Perhaps the trial court, in order-

---

**4.** We therefore disapprove of the cases of *Cowher v. Dornhaffer, supra; Flint v. Fosnaught, supra;* and *Dixon v. Priester, supra.*

**5.** *See Snyder v. Bio-Lab, Inc.*, 94 Misc.2d 816, 405 N.Y.S.2d 596 (1978). There, plaintiffs replaced their lost cows with younger cows. The evidence showed that young cows produce less milk than more mature cows, and that replacement cows of comparable quality to those lost were available in three months after the accident. Plaintiffs were permitted to recover only the profit that the lost cows would have generated for three months, taking into account the value of the milk produced by the younger cows during this time. The court stated:

Plaintiffs intentionally balanced the benefit of investing in younger cows against the expected loss in their production during their early years. The low production rate of the replacement cows did not

ing the remittitur, should have awarded damages of $1,800 per cow instead of $1,650. However, Kintner has not objected on appeal to the court's evaluation of $1,650, and we cannot ourselves substitute an evaluation of $1,800. Moreover, since Kintner did not meet a condition necessary to the recovery of damages for loss of use, any error by the court in refusing to admit the milk production evidence was harmless.

■ Finally, Claverack's argument that the remittitur was not appropriate because the issues of liability and damages were inseparable is without merit. The remittitur was ordered because the court concluded that it should not have instructed the jury that it could award damages for unborn cattle and lost profits. The issues of liability and damages were not inseparable; to the contrary, the evidence on liability was distinct from that on damages, and nothing suggests that this is a case of a compromise verdict. *See Stathas v. Wade Est.*, 251 Pa.Super. 269, 380 A.2d 482 (1977); *Lambert v. PBI Industries*, 244 Pa.Super. 118, 366 A.2d 944 (1976).

Appeal No. 1342 Philadelphia 1982 is quashed. On appeals No. 1558 Philadelphia 1982 and No. 1559 Philadelphia 1982, the orders are affirmed.

result from the defendant's negligence but from plaintiffs' business decision.
*Id.* at 819, 405 N.Y.S.2d at 598.