No. 87-115

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

GRANT R. McPHERSON,

Plaintiff and Appellant,

-vs-

STANLEY SCHLEMMER and LYNDA
SCHLEMMER,

Defendants and Respondents.

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Douglas J. Wold and Martin R. Studer argued; McCurdy,
Wold, Peterson & Fischer, Polson, Montana

For Respondent:

Charles E. McNeil and Gary L. Graham argued; Garlington,
Lohn & Robinson, Missoula, Montana

For Amicus Curiae:

Gene Todd, pro se, Montana Embryo Transplant Center,
Belgrade, Montana
Gerald Kitto, pro se, Gallatin Embryonics, Belgrade,
Montana
Holland & Hart, American Salers Assoc., Billings,
Montana

Submitted: November 3, 1987

Decided: January 8, 1988

Filed: JAN - 8, 1988

*Ethel M. Harrison*
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Two of Mr. McPherson's Salers breeder cows were killed when they wandered onto a highway from their pasture on the Schlemmers' property. Mr. McPherson prevailed in this negligence action against the Schlemmers after a jury trial in the Twentieth Judicial District, Lake County. He appeals two of the District Court's rulings on damages. We reverse in part, affirm in part, and remand.

The issues are:

1. Did the District Court err by denying Mr. McPherson's motion for a new trial on the issue of damages for lost profits from his embryo production business as a result of the deaths of his two exotic cows?

2. Did the District Court err by denying Mr. McPherson's motion to amend the judgment to include prejudgment interest?

The case was submitted to us on an agreed statement of facts, without transcript or exhibits. Our recitation of the facts is therefore limited. Plaintiff Grant McPherson raises pure-blood Salers cattle in the Flathead Valley. His business involves the production and sale of Salers embryos from donor cows. The embryos are sold for implantation into commercial grade surrogate mother cows.

During the spring of 1983, Mr. McPherson entered into an agreement with the Schlemmers whereby some of the Salers donor cows were pastured on the Schlemmers' property. In April 1983, two of these cows wandered from their pasture and were struck and killed on a highway.

Mr. McPherson brought suit alleging that the Schlemmers negligently failed to keep their pasture gate closed. The Schlemmers denied liability. In his complaint, Mr. McPherson sought to recover damages for the cows' fair market value,

2

for lost profits caused by the interruption of his embryo production business, and for incidental losses. However, the District Court disallowed proof of lost profits. The jury found the Schlemmers 70% liable and set damages at $101,500 for the fair market value of the cows plus incidental damages. Mr. McPherson's net judgment was $71,050 plus interest from the date of the verdict.

Following return of the jury verdict, Mr. McPherson sought an award of prejudgment interest, which was denied by the court. Mr. McPherson then filed motions for a new trial and to amend the judgment. The court denied both motions and Mr. McPherson now appeals. He asks this Court to award him prejudgment interest and to grant a new trial at which he may present evidence of his lost profits.

I

Did the District Court err by denying Mr. McPherson's motion for a new trial on the issue of damages for lost profits from his embryo production business as a result of the deaths of his two exotic cows?

This matter was originally raised in a motion in limine. The District Court ruled that it would admit proof of the fair market value of the cows for breeding purposes, but would not admit proof of loss of use, lost profits, or loss of production of embryos, "because to do so would permit double recovery of damages." The court stated it would allow proof of the "special atributes [sic] of the Salers Cattle for breeding purposes, which is what makes them worth far more than the average cow." It ruled, however, that "to then permit stacking of calf crop after calf crop would unjustly double damages and would be based upon speculation." The court denied Mr. McPherson's motion for a new trial on the issue of damages for lost profits, without further explanation.

3

The measure of damages in a tort case is the amount which will compensate the plaintiff for all the detriment proximately caused by the defendant's wrongful act. Section 27-1-317, MCA. The Schlemmers argue that Mr. McPherson has received full compensation for his damages by the award of the fair market value of his breeder cows. Mr. McPherson contends that he was unable to replace the cows immediately and that the award of funds to replace them after trial nearly four years later does not compensate him for lost sales of calves and embryos in the meantime. His offer of proof alleged that each cow would produce one calf per year and a yearly average of twelve embryos which would result in live births. He offered to prove lost profits of between $215,791 and $443,371 from April 1983 to December 1985, plus additional lost profits to date of trial.

Fair market value generally includes a component for present valuation of future profits. However, it does not follow that in every situation an award of the fair market value of an animal compensates its owner for all lost profits from the use of the animal. In Snyder v. Bio-lab, Inc. (1978), 405 N.Y.S.2d 596, the court was faced with a claim similar to that raised by Mr. McPherson. In that case, plaintiff's dairy cows were injured and had to be destroyed after use of defendant's defective teat dip. The court reasoned that ordinarily, fair market value at the time of loss will be the measure of damages applied. It then demonstrated circumstances under which an additional amount should be awarded. The court stated:

> As with personal property generally, the measure of damages for injury to, or destruction of, an animal is the amount which will compensate the owner for the loss and thus return him, monetarily, to the status he was in before the loss. Where the animal has a market value, the market

value at the time of the loss, or the difference in market value before and after injury will generally be the measure applied. Any special value, particular qualities, or capabilities are generally considered as factors making up market value. For example, when an owner has received the market value of an animal, he will have been compensated for any use he might have made of the animal for breeding purposes. The market value may be enhanced because the animal is carrying unborn young, but the young have no value apart from the mother. Also, the loss of produce of an animal is an item of consideration in determining market value, rather than a separate item of damage. The high production rate of a slaughtered cow is to be considered as a particular quality along with breed, age, condition and other factors in computing the animal's market value.

. . .

In addition, plaintiffs are entitled to recover the loss of profit for the time period required to replace the slaughtered cows with cows of equal quality.

. . .

The fair market value of the slaughtered cows does not adequately compensate the plaintiffs for their loss. They are entitled to the profit that the 39 cows, the best milk producers in the herd, would have generated until replacement cows of equal quality were available. Proof establishes that replacement cows of comparable quality were available in the market 3 months subsequent to the accident. . .

Snyder, 405 N.Y.S.2d at 597-98. Although that court stated that the value of produce of an animal is a component of the animal's market value, the court also allowed as damages profits which would have been earned from the sale of milk in the time between the accident and the reasonable date of replacement of the animals.

5

In a similar case, the Supreme Court of Missouri ruled that "the limiting circumstance is that there may be no recovery for future milk and calf production of a cow which has been disposed of, after a replacement of comparable capacity has been or could have been acquired." Missouri Farmers Ass'n. v. Kempker (Mo.banc 1987), 726 S.W.2d 723, 726. In a case in which laying chickens had to be destroyed after using defendant's self-feeding system, the Supreme Court of Utah held that plaintiff's damages included both the market value of the chickens destroyed and the lost profits "for the period in which there was a loss of use before the replacements could prudently be obtained. . . ." Park v. Moorman Mfg. Co. (Utah 1952), 241 P.2d 914, 921-22. See also Kintner v. Claverack Rural Elec. Co-op., Inc. (Pa.Super. 1984), 478 A.2d 858.

In contrast to the foregoing cases, the lower court held, based on Covey v. Western Tank Lines (Wash. 1950), 218 P.2d 322, that to allow damages for lost profits in addition to the fair market value of the animals which were destroyed would permit double recovery of damages. We do not choose to affirm the lower court and the theory set forth by the Washington Court in Covey.

We adopt the theory of damages set forth in Snyder. We conclude that the award to Mr. McPherson of the fair market value of his cows did not compensate him for profits lost between the date the cows were killed and the date they reasonably could have been replaced, which would be the date replacement cows of comparable quality were available in the marketplace. We hold that in addition to the fair market value of the cows, Mr. McPherson is entitled to his lost profits for that period of time.

As additional guidance on remand, the District Court should refer to Graham v. Clarks Fork Nat. Bank (Mont. 1981),

6

631 P.2d 718, 38 St.Rep. 1140, aff'd after remand, 663 P.2d 320 (1983). In that case, plaintiff's planned artificial insemination program was interrupted by "lowbrow" bulls. The Court allowed damages for one generation of future purebred calves. Citing prior caselaw, the Court stated that "future damages need only be reasonably certain, and not absolutely certain." Graham, 631 P.2d at 721. As also discussed in Baden v. Curtiss Breeding Service (D.Mont. 1974), 380 F.Supp. 243, when the many variables in projecting future "crops" of animals make the damages too uncertain, they cannot be recovered. While these cases are not directly on point with the present case, they do point out a second limitation on future damages.

We remand this matter to the District Court to give Mr. McPherson the opportunity to present his evidence on the theory that the cows were not immediately replaceable. If the evidence shows that the cows could not reasonably be replaced immediately, then Mr. McPherson must be allowed to present to a finder of fact his evidence of reasonably certain lost profits from sale of embryos and calves between the time the cows were killed and the time they could reasonably have been replaced.

II

Did the District Court err by denying Mr. McPherson's motion to amend the judgment to include prejudgment interest?

The three criteria for prejudgment interest, as set out in Safeco Ins. Co. v. Lovely Agency (Mont. 1985), 697 P.2d 1354, 1356, 42 St.Rep. 509, 511-12, are that 1) there is an underlying monetary obligation, 2) the amount of damages is certain or capable of being made certain by calculation, and 3) the plaintiff's right to recover damages vests on a particular day. Mr. McPherson argues that his right to prejudgment interest is not defeated by the fact that liability was

7

contested or by the fact that negligence was apportioned by the jury. He says it would be inequitable to compound his loss by denying prejudgment interest.

We conclude that the three-part standard for prejudgment interest is not met. Since liability was contested, no monetary obligation existed until the jury determined the degree of comparative negligence. If the jury had found Mr. McPherson 50% negligent or more, there would have been no monetary obligation on the part of the Schlemmers. The uncertainty of the amount of damages is shown by the differences between what Mr. McPherson claimed in his complaint, what he claimed at trial, and what the jury awarded. Finally, the right to recover vested only on the date of the jury verdict, not on an earlier date certain. We affirm the District Court's refusal to award prejudgment interest.

Reversed and remanded for further proceedings on the issue of lost profits.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

Mr. Justice L. C. Gulbrandson, concurring and dissenting.

I concur with the affirmance of the District Court's refusal to award prejudgment interest but I disagree with the remand for determination of lost profits from the plaintiff's embryo production business.

The trial judge issued the following order prior to trial:

> The Court will admit proof of the fair market value of the Plaintiff's Salers Cattle for breeding purposes and such incidental damage as occurred. The Court will not admit proof of loss of use, lost profits or loss of production of embryos and calves because to do so would permit double recovery of damages. The Plaintiff will be permitted proof of the special attributes of the Salers Cattle for breeding purposes, which is what makes them worth far more than the average cow. But to then permit stacking of calf crop after calf crop would unjustly double damages and would be based upon speculation. Covey v. Western Tank Line, (Wash) 218 P2d 322; State v. Morison, (Colo) 365 P2d 266. There are apparently no Montana cases defining the measure of damage for the outright killing of breeding stock.

In compliance with that order, the plaintiff was allowed to present expert testimony as to the embryo production and implantation process, although plaintiff was prevented from introducing testimony as to monetary lost profits. The jury, in returning a market value of $101,500 for the two Salers cows, must have considered their special attributes for breeding purposes. The judgment in the amount of $71,050, computed on the basis of plaintiff's 30 percent negligence, has been satisfied and is not the subject of this

9

appeal. To now remand this case to a different jury on the issue of lost profits from the date of accident to the date of availability of replacement cows seems to be a subversion of the jury process. It appears to me that, if this Court is determined to adopt the factory theory of embryo production, this matter should be remanded for trial on all issues, so that there can be no duplication of damages by two separate juries.

An additional ground for my disagreement is that the appellant has, in effect, conceded that comparable cows were available immediately, but is contending that because of financial circumstances he could not replace them until after the judgment in this case was satisfied.

The following is a quote from appellant's brief, pages 16 and 17:

> McPherson is a businessman. He purchased assets and placed them in production, expecting revenues from embryo sales to repay him the purchase price and yield a profit. When the Schlemmers caused the loss of his assets, they incurred liability for the fair market value of those assets. If they had paid McPherson immediately, he could have replaced them without interrupting production, and been fully compensated for all the detriment he suffered. However, the Schlemmers did not pay McPherson until required to do so by the jury's verdict. That delay prevented McPherson from producing embryos, and thereby caused him to lose profits he should have received from his investment in the cows. (Emphasis added.)

Instead of adopting the New York trial court opinion of Snyder, supra, as authority, I would affirm the District Court's reliance on Covey, supra.

10

In my opinion the District Court did not manifestly abuse its discretion and I would affirm the order denying a new trial on the issue of lost profits and the order denying prejudgment interest.

_____
Justice

11