No. 00-506

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 227

TRIFAD ENTERTAINMENT, INC., and JOE LEE,

INC., in its capacity as shareholder of TRIFAD

ENTERTAINMENT, INC.,

Plaintiffs, Appellants and Cross-Respondents,

v.

BRAD ANDERSON and JOHN DOE I through V,

Defendants, Respondents and Cross-Appellants.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Diane Barz, Judge Presiding

COUNSEL OF RECORD:

For Appellants:

Martha Carlson McCormack, Pedersen & Hardy, Billings, Montana

For Respondents:

Peter T. Stanley, Attorney at Law, Billings, Montana

Submitted on Briefs: March 1, 2001
Decided: November 15, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Trifad Entertainment, Inc., (Trifad) and its majority shareholder, Joe Lee, Inc., (collectively Appellants) appeal from the Thirteenth Judicial District Court's decision determining that Brad Anderson (Brad), Trifad's minority shareholder, did not convert Trifad's assets, that he did not breach the implied covenant of good faith and fair dealing or fiduciary duties, and that he did not engage in malicious and fraudulent behavior warranting punitive damages pursuant to § 27-1-221, MCA. We affirm in part, reverse in part and remand.

¶2 The following issues are presented on appeal:

¶3 1) Did the District Court err in determining that Trifad's minority shareholder did not convert Trifad's property when he sold substantially all of Trifad's property without obtaining the majority shareholder's approval pursuant to § 35-1-823, MCA?

¶4 2) Is the District Court's finding that Joe Lee, Inc.'s sole shareholder was unavailable for any consultation between July 1996 and September 16, 1996, clearly erroneous?

¶5 3) What remedies are available to Appellants under the circumstances of this case?

¶6 4) Did the District Court err when it held that Montana law specifically requires an initial finding that one party breached a contract in order to have a breach of the implied covenant of good faith and fair dealing?

¶7 5) Is a new trial required due to the District Court judge's perceived prejudice against Joe Lee, Inc.'s sole shareholder?

¶8 6) Did the District Court err in finding that Brad did not breach his fiduciary duties to Appellants?

¶9 7) Did the District Court err when it determined that Appellants did not present any proof of actual malice or actual fraud and declined to consider a punitive damages award?

¶10 8) Must Trifad indemnify Brad, as Trifad's director, for all of his legal expenses incurred in this case under § 35-1-453, MCA?

¶11 We combine issues 1, 2, and 3, do not reach issues 4 and 5, and reach issues 6, 7 and 8.

## FACTUAL AND PROCEDURAL BACKGROUND

¶12 Joe Lee, Inc., is a Montana corporation which was formed in approximately 1991 to issue loans to promising Montana ventures. While it originally had two shareholders, Philip Furtney (Phil) was Joe Lee, Inc.'s sole shareholder after 1996. Phil, a Canadian citizen, is a self-proclaimed entrepreneur with business interests in the United States.

¶13 Brad is a college graduate with one year of post-graduate study in business administration. He owns 100 percent of the shares of City Club, a Montana corporation doing business in Billings, Montana, as "Bullwackers." He also has other business interests in Billings.

¶14 Phil and Brad met when Phil installed electronic bingo machines in City Club. Additionally, Joe Lee, Inc., loaned money to a Billings bar, "Dr. Feelgoods," and Phil's business partner at the time in Joe Lee, Inc., hired Brad to manage Dr. Feelgoods. Phil and Brad became further acquainted while Brad managed the bar.

¶15 In September of 1992, Brad's bar, Bullwackers, entered into a three-year written contract to lease fifteen pool tables from Fleetwood Amusement (Fleetwood), a Billings vending business. As part of the agreement, Fleetwood maintained the tables and split the tables' income with Bullwackers on a 50/50 basis. The tables were located and operated in Bullwackers bar.

¶16 In 1993, Brad made a presentation to Phil's business partner in Joe Lee, Inc., and stated that Fleetwood was in a "money squeeze," and it would sell the fifteen pool tables located in Bullwackers for $30,000. Brad indicated he could not afford to buy the tables by himself.

¶17 At this point, Brad and Joe Lee, Inc., created and incorporated Trifad Entertainment, Inc., for the purpose of purchasing the pool tables from Fleetwood and then leasing them

from Trifad to Bullwackers. Trifad's shares were distributed 2/3 to Joe Lee, Inc., the majority shareholder, and 1/3 to Brad, the minority shareholder. Pursuant to an oral agreement, Joe Lee, Inc., loaned $31,000 to Trifad, and it used the borrowed funds to purchase the fifteen pool tables. Additionally, Trifad and Bullwackers agreed to split the tables' income on a 50/50 basis and that Trifad would maintain the tables. From Trifad's 50 percent share of the income, it was agreed Trifad would repay the loan to Joe Lee, Inc., over a 36-month period, at $1,020 a month at 12 percent interest. As an officer and director of Trifad, Brad was responsible for Trifad's day-to-day operations such as the reporting of transactions, paying bills, ensuring the tables were maintained, filing taxes and handling all financial aspects of the business.

¶18 The parties did not establish a time limit for their vending arrangement. While Phil believes the arrangement was to last indefinitely and expand into a broad-based vending company over a period of time, Brad described it as a month-to-month vending agreement.

¶19 This arrangement operated smoothly for three years, and Trifad paid dividends in 1995 and 1996. However, in July of 1996, problems arose. By this time, Phil was Joe Lee, Inc.'s sole shareholder. On July 11, 1996, he traveled to Montana to meet with the Montana Gaming Commission regarding the loan Joe Lee, Inc., made to Dr. Feelgoods and the sale of Dr. Feelgoods to Brad's spouse, Pam Anderson. When the meeting was called to order the next day, the Gaming Commission arrested Phil on Florida RICO charges and took him to the Yellowstone County Detention Center. Thirteen days later, Phil was extradited to Florida where he was incarcerated until his release on bond on September 16, 1996. After his release, he could not leave the State of Florida until approximately April or May of 1997.

¶20 Meanwhile, a few days after Phil was extradited to Florida, Brad secured a loan for $15,000. He deposited this sum into Trifad's bank account, and then he sold Trifad's pool tables to himself for $15,000. He arrived at the $15,000 amount after contacting a Fleetwood manager who said the tables were worth between $900 and $1000. In addition, Brad wrote checks on Trifad's account for taxes owed and estimated tax payments. Brad then withdrew 1/3 of the balance remaining in Trifad's account and left Joe Lee, Inc.'s 2/3 share in the account. During these transactions, Brad never attempted to contact Phil. Nor did Brad attempt to contact Phil's attorney or Phil's friends in Billings-all of whom he knew.

¶21 At trial, Brad testified that he took this action because his attorney and the State of

Montana informed him that the sale of Dr. Feelgoods to his wife could not take place if he had a connection with Phil. He stated that this was the reason Phil traveled to Montana for the July 12, 1996, meeting. He further testified that, as the owner of Bullwackers, he saw only two choices: either have the tables removed from Bullwackers or buy the tables. He concluded that, under the circumstances, the "only fair thing and obvious thing [for Trifad] to do [was] to sell them to Bullwackers."

¶22 The fifteen pool tables and their attendant equipment remained at Bullwackers, and Brad continued to collect income from the tables. Later in 1996, Brad traded thirteen of them and purchased new tables. The other two tables remained in Bullwackers.

¶23 On November 25, 1996, Phil's attorney wrote to Brad's counsel to determine why Brad had stopped sending Trifad's monthly account statements after June of 1996. After receiving no response, Phil wrote to Brad on January 16, 1997, to remind him that it was time for Trifad to pay its yearly dividend, and he threatened legal action if Brad did not respond in ten days.

¶24 The next day, Brad's attorney wrote to Phil's attorney and informed him that the corporation had, as a practical matter, been terminated, and that the pool tables had been sold and the remaining assets distributed to pay debts and distributions to shareholders. A signature card for Trifad's corporate account was enclosed with the letter. While the letter included a deposit list indicating the pool tables had been sold for $15,000, the letter does not state to whom the tables were sold. Phil did not discover Brad bought the tables until Brad responded to a discovery request during this litigation three years later.

¶25 In response to the information Trifad's pool tables were sold, Phil's attorney wrote a letter to Brad's attorney stating his client and he were "puzzled and concerned about what has happened to the corporation" since Phil, as the sole shareholder in Joe Lee, Inc., Trifad's majority shareholder, was not consulted about terminating Trifad or selling its assets. Brad's attorney answered by sending bank statements, a Trifad spread sheet, other financial data of City Club and Trifad stock certificates affirming Brad owned 1/3 and Phil owned 2/3 of Trifad stock.

¶26 In July 1998, Trifad and Joe Lee, Inc., filed a complaint alleging breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing and conversion. Additionally, Appellants contended Brad's actions were performed with actual malice and constituted actual fraud. At trial Brad denied these claims primarily on the

grounds that his actions were reasonable considering Phil was in jail facing criminal charges, and he filed a cross-claim requesting Trifad indemnify him for all litigation expenses or liabilities incurred in his capacity as Trifad's director. The Thirteenth Judicial District Court held a non-jury trial. The court held in Brad's favor on all of Appellant's counts, but it denied Brad's cross-claim for indemnification. Trifad and Joe Lee, Inc., appeal the court's decision. Brad appeals the court's denial of corporate indemnification.

## STANDARD OF REVIEW

¶27 This Court reviews a district court's findings of fact to determine whether they are clearly erroneous and gives due regard to the trial court's opportunity to judge witnesses' credibility. Rule 52(a), M.R.Civ.P.; *Houdashelt v. Lutes* (1997), 282 Mont. 435, 441, 938 P.2d 665, 669. In determining whether a court's findings of fact are clearly erroneous, we first review the record to see if the findings are supported by substantial evidence. If the findings are supported by substantial evidence, we determine if the trial court has misapprehended the effect of the evidence. If substantial evidence exists and the effect of the evidence has not been misapprehended, this Court may nevertheless determine that a finding is clearly erroneous if a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed. *Houdashelt*, 282 Mont. at 441, 938 P.2d at 669. The Court reviews conclusions of law to determine whether the trial judge's interpretation of the law is correct. *Houdashelt*, 282 Mont. at 441, 938 P.2d at 669.

## DISCUSSION

¶28 1) Did the District Court err in determining that Trifad's minority shareholder did not convert Trifad's property when he sold substantially all of Trifad's property without obtaining the majority shareholder's approval pursuant to § 35-1-823, MCA?

¶29 2) Is the District Court's finding that Joe Lee, Inc.'s sole shareholder was unavailable for any consultation between July 1996 and September 16, 1996, clearly erroneous?

¶30 3) What remedies are available to Appellants under the circumstances of this case?

¶31 Appellants claim the District Court erred when it held that Brad did not convert Trifad's corporate assets. They assert that before substantially all of a corporation's assets can be sold, the majority of shareholders must approve the sale pursuant to § 35-1-823, MCA. Appellants explain that Brad, who held only 1/3 of Trifad's issued and outstanding

shares, lacked authority under the statute to sell all of Trifad's pool tables to himself without obtaining the approval of Joe Lee, Inc., which held 2/3 of Trifad's shares.

¶32 The Montana Business Corporation Act, at § 35-1-823, MCA, sets forth a procedure for a corporation's sale, lease, exchange, or other disposition of all or substantially all of its property other than in the usual and regular course of business. For such a transaction to be authorized, the board of directors must first recommend the proposed transaction to the shareholders, and the shareholders entitled to vote must approve the transaction. The statute requires that the corporation notify shareholders of a proposed shareholders meeting to consider a corporation's intent to sell the property. The notice must contain a description of the proposed transaction. Ultimately, the proposed transaction must be approved by an affirmative vote of two-thirds of the voting shareholders.

¶33 In its Findings of Fact and Conclusions of Law, the District Court failed to address § 35-1-823, MCA. Similarly, on appeal, Brad failed to address the statute's requirements. At best, the District Court found that Phil, who was incarcerated from July of 1996, until September 16, 1996, was unavailable for consultation since Phil testified that he was "fairly unavailable" while in Florida facing criminal charges. From this testimony, the court and Brad appear to imply that Brad could not have contacted him regarding the sale of the pool tables. Additionally, the District Court found that Brad's liquor and gaming licenses were placed in jeopardy with the State of Montana because Phil was arrested. Both the District Court and Brad emphasized the reasonableness of Brad's actions under these circumstances.

¶34 Appellants claim that Phil was not unavailable and, even if he was, his unavailability and Brad's good faith are irrelevant to Trifad's conversion claims. They reason that Brad had no authority to sell the pool tables without two-thirds approval of Trifad's shareholders, and Phil's "unavailability" does not remedy Brad's noncompliance with § 35-1-823, MCA. Furthermore, Appellants insist that Brad's good faith, if any, is not relevant in determining whether he complied with the statute or converted Trifad's property.

¶35 We hold that Brad failed to comply with § 35-1-823, MCA, when he sold corporate property without the requisite notice and shareholder approval. Here, Brad, an officer and director of Trifad, sold, to himself, substantially all of Trifad's property other than in the usual and regular course of business. Prior to doing so, he did not first recommend the proposed transaction to the majority shareholder, Joe Lee, Inc. He did not notify Joe Lee, Inc., of a proposed shareholders meeting to consider selling Trifad's property. He did not

provide Joe Lee, Inc., with a description of the proposed transaction. In fact, he did not inform Joe Lee, Inc., of his actions until six months later when Phil threatened legal action, and, even at that time, Brad did not inform Phil that he sold the tables to himself. At trial, Brad admitted he had no authority to make decisions for Joe Lee, Inc. Contrary to the mandates of § 35-1-823, MCA, Brad sold corporate property without an affirmative vote of two-thirds of the votes entitled to be cast on the transaction. The statute sets forth a clear procedure for selling corporate assets, and there is no indication that Brad even attempted to comply.

¶36 While the Court acknowledges that contacting Phil may have been difficult, the record indicates it was not impossible. Phil testified that his attorney and friends and family contacted him in jail. Yet, Brad testified that he made no attempt to contact Phil or his attorney or friends in Billings-all of whom he was aware.

¶37 At any rate, even if Phil were unavailable for consultation, § 35-1-823, MCA, does not contain any exceptions to the notice and approval requirements governing the sale of corporate assets, and we conclude Phil's alleged unavailability and Brad's good faith are irrelevant as to Brad's noncompliance with the statute or his liability for the tort of conversion.

¶38 Having held that Brad failed to comply with § 35-1-823, MCA, we must next determine whether his noncompliance resulted in a conversion of Trifad's property. A claim for conversion must satisfy the following elements: ownership of property, a right of possession, unauthorized dominion over that property by another, and resulting damages. *Eatinger v. Johnson* (1994), 269 Mont. 99, 104, 887 P.2d 231, 234. There must be a transfer of ownership for a claim of conversion to exist. *Farmers State Bank of Victor v. Imperial Cattle Co.* (1985), 218 Mont. 89, 96, 708 P.2d 223, 227.

¶39 The District Court held that Brad exercised no unauthorized dominion over Trifad's property because the property was sold for market value. The court stated the property was "properly exchanged for cash and the cash made available to the corporation." Furthermore, the court determined that Brad's actions resulted in no damages because "if the property had not been sold, it would have remained unused and unable to generate any income." On appeal, Brad adopts the District Court's rationale and stresses that Appellants suffered no damages since the tables were sold at or above market value.

¶40 In contrast, Appellants contend that Brad is liable for the tort of conversion. Trifad

insists it owned the pool tables and had the right to possess them, and Brad could not unilaterally and silently terminate the agreement to lease them and then continue to use the tables and their proceeds. In doing so, Appellants argue that Brad exercised "unauthorized dominion" over Trifad's corporate assets.

¶41 Additionally, Appellants assert Brad's actions resulted in damage. They contend that Brad, by "squeezing out" Trifad and Joe Lee, Inc., eliminated any opportunity for Trifad to continue to collect income from the tables and, effectively, destroyed Trifad as a business. Additionally, Appellants maintain that as a result of Brad's secretive actions, Trifad could not devise another way to use the pool tables nor could Joe Lee, Inc., sell its shares at going concern value to someone whose circumstances did not endanger Brad's personal financial interests.

¶42 Furthermore, Appellants argue that this case presents peculiar circumstances in which the mere value of the tables cannot compensate Appellants for their loss, and Brad should be liable to Appellants for their lost profits and opportunities. Appellants insist that had Brad been a majority shareholder and been able to authorize the sale of substantially all of Trifad's assets, this would have triggered dissenters' rights and entitled Joe Lee, Inc., to have its shares purchased at "going concern" value without being limited to a recovery in the amount of the liquidation value of the assets being sold. Trifad urges the Court to address whether relief in a form resembling dissenting shareholders' rights may be afforded where the minority "squeezes out" the majority.

¶43 After reviewing the record, we conclude that the District Court erred in concluding that Brad properly exchanged Trifad's property for cash. Here, Trifad owned the pool tables. According to Brad and Phil's testimony, Trifad purchased the pool tables and leased them to Bullwackers. Indeed, the Bill of Sale Brad executed states Trifad owned the fifteen pool tables, pool table lights and accessories. Accordingly, Trifad not only owned the pool tables, but it also had a right of possession over them.

¶44 Thus, when Brad sold Trifad's pool tables to himself without authorization, he impermissibly transferred ownership from Trifad to himself. Simply stated, Brad, as Trifad's minority shareholder, could not "properly" sell Trifad's property because he did not own the property and he did not obtain the requisite shareholder approval necessary to sell the property. We hold that the District Court erred in concluding that Brad did not exercise unauthorized dominion over Trifad's property, and we remand this issue to the District Court for a determination of damages resulting therefrom.

¶45 On remand, Trifad and Joe Lee, Inc., may present evidence on the theory that this case presents peculiar circumstances under *Graham v. Clarks Fork National Bank* (1981), 193 Mont. 282, 285, 631 P.2d 718, 720. If the evidence shows that this case presents peculiar circumstances, the court may consider whether Trifad and Joe Lee, Inc., are entitled to damages other than those provided for under § 27-1-320, MCA. Possible damages may include any future lost income and profits Appellants suffered. *Graham*, 193 Mont. at 285-86, 631 P.2d at 720-21. Additionally, since this case presents circumstances analogous to those addressed in Montana's dissenters' rights statutes and *Hansen v. 75 Ranch Co.*, 1998 MT 77, 288 Mont. 310, 957 P.2d 32, the court should, under these authorities, consider whether Joe Lee, Inc., is entitled to fair value for its Trifad shares and, if so, the court may determine the fair value of Joe Lee, Inc.'s shares as calculated immediately before Brad converted Trifad's assets in July 1996.

¶46 Because we determine that Trifad and Joe Lee, Inc., are entitled to a determination of damages on their cause of action for conversion, we do not reach the issue of whether Brad breached the implied covenant of good faith and fair dealing. Recovery under this theory would not enhance the damages available to Appellants. Furthermore, since we hold that Brad converted Trifad's corporate assets and remand for a determination of damages, we need not consider whether the District Court judge's alleged bias warrants a new trial.

¶47 6) Did the District Court err in finding that Brad did not breach his fiduciary duties to Appellants?

¶48 The District Court held that Appellants failed to prove that Brad breached any duty as Trifad's director, and the court held that Brad's actions complied with § 35-1-418, MCA. Appellants contend that when Brad converted Trifad's assets, he breached his fiduciary duties to Trifad.

¶49 We agree. Here, Brad, as Trifad's director and officer, did not appropriately discharge his duties when he converted Trifad's assets. Sections 35-1-418 and 35-1-443, MCA (corporate officers and directors must discharge their duties in good faith; with the care an ordinarily prudent person in a similar position would exercise under similar circumstances; and in a manner the director or officer reasonably believes is in the corporation's best interests). Accordingly, we hold the District Court erred when concluding that Brad did not breach his fiduciary duties to Trifad.

¶50 7) Did the District Court err when it determined that Appellants did not present any proof of actual malice or actual fraud and declined to consider a punitive damages award?

¶51 At the close of Appellants' case-in-chief, Brad requested the District Court dismiss Appellants' punitive damages claim because the testimony showed that the pool tables were sold for fair market value, that the money from the sale of the pool tables went into the corporate account, that bills were paid and that a corporate account signature card was sent to Phil's attorney in January of 1997. The District Court granted the motion without explanation. The court's conclusions of law state Appellants presented no proof of actual malice or actual fraud warranting punitive damages.

¶52 Appellants contend that the District Court clearly erred in reaching this conclusion. Citing § 27-1-221, MCA, Appellants maintain they established that Brad converted Trifad's property and then concealed that fact from Phil, the only person capable of acting on Trifad's behalf. They argue that a multitude of facts support a finding of malice and fraud necessary to support punitive damages.

¶53 Section 27-1-221, MCA, governs the award of punitive damages. It provides that reasonable punitive damages may be awarded in a non-contract action when a defendant has been found guilty of actual fraud or actual malice. Actual malice exists if a defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and he 1) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury; or 2) deliberately proceeds to act with indifference to the high probability of injury. Actual fraud exists if a defendant 1) makes a representation with knowledge of its falsity; or 2) conceals a material fact with the purpose of depriving the plaintiff of property or legal rights or otherwise causing injury. Actual fraud is shown only when a plaintiff has a right to rely upon the representation of the defendant and suffers injury as a result of the reliance.

¶54 All elements of punitive damages must be supported by clear and convincing evidence. Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. Section 27-1-221(5), MCA. We have held that punitive damages may be awarded where the nature of the wrong complained of and injury inflicted goes beyond merely violating the rights of another and is found to be willful and malicious. *Lane v. Dunkle* (1988), 231 Mont. 365, 370, 753 P.2d 321, 324.

¶55 Here, after reviewing the evidence, we hold the District Court correctly held that Appellants did not present a prima facie case of punitive damages as required under § 27-1-221, MCA. The uncontroverted facts show that Brad, within days after Phil was arrested and without even attempting to contact him, engaged in an unauthorized sale of substantially all of Trifad's assets. The facts do not show, however, that Brad acted with the knowledge that his actions would create a high probability of injury to Appellants or that he intentionally concealed his actions to injure Appellants. Rather, substantial evidence in the record indicates that Brad, with Phil facing criminal charges, believed he needed to "disentangle" himself from Phil and believed that he was acting in Appellants' best interests when he sold the pool tables for fair market value.

¶56 Although Brad failed to inform Phil that he sold the pool tables until Phil threatened litigation and did not inform Phil he sold the pool tables to himself until litigation commenced, there exists no clear and convincing evidence that Brad's actions amounted to actual malice or actual fraud under § 27-2-221, MCA. We therefore hold that the court did not err in striking Appellants' punitive damages claim.

¶57 8) Must Trifad indemnify Brad, as Trifad's director, for all of his legal expenses incurred in this case under § 35-1-453, MCA?

¶58 Brad contends he is entitled to judgment on his counterclaim seeking indemnification from Trifad. He argues § 35-1-453, MCA, requires a corporation indemnify a director who is wholly successful on the merits in the defense of a proceeding to which he was a party. Appellants maintain, and we agree, that except for their breach of fiduciary duty claim, they did not bring their action against Brad in his capacity as Trifad's director.

¶59 Since we reverse the District Court's conclusion that Brad did not breach his fiduciary duties to Trifad, we hold that Brad is not wholly successful on this issue, and he is not entitled to corporate indemnification for his legal expenses.

¶60 Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ JAMES C. NELSON