111 N.J. Super. 22 (1970)
266 A.2d 605
LAURENCE G. O'CONNOR, PLAINTIFF-RESPONDENT,
v.
HOWARD S. HARMS, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1970.
Decided July 7, 1970.
*24 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Thomas P. Cook argued the cause for appellants (Mr. Robert D. Jordan, on the brief).
Mr. Harry Green argued the cause for respondent.
The opinion of the court was delivered by KILKENNY, P.J.A.D.
The eight individual defendants and the board of education of Central Regional High School District in the County of Ocean (hereinafter "board of education") appeal from a judgment in favor of plaintiff and against them, based upon a verdict awarding plaintiff (a) $9600 for compensatory damages against the board of *25 education; (b) no compensatory damages against the eight individual defendants, and (c) punitive damages against each of the eight individual defendants for the following respective amounts: (1) Howard S. Harms  $3000; (2) Anthony W. Raymond  $2000; (3) Edwin L. Voll  $2000; (4) David J. Bentz  $3000; (5) Frank Deacon  $2000; (6) Thomas E. Moeller  $2000; (7) Joseph Boyd  $2000, and (8) Thomas A. Peterson, Jr.  $2000.
Defendants' motion for a new trial was denied.
There is no cross-appeal by plaintiff.
The pretrial order refers to the nature of the action as one for "Malicious interference with plaintiff's contractual relations and conspiracy." Plaintiff sought both compensatory and punitive damages against all defendants, including the board of education. While there is reference in paragraph 7 of the pretrial order to "breach of contract" as one of the several issues listed therein, and the order amending item 5 of the pretrial order relating to damages refers to breach of the 1966-67 and 1967-68 contracts, the trial court ruled as a matter of law that there was no breach of contract involved in this case. Hence, any award by the jury may not be legally justified on the concept of "breach of contract."
Plaintiff's brief confirms, as he maintains in his point I, "Plaintiff's action against defendants was for malicious interference with his employment." A recital of the basic facts will make clear the issues involved.
On August 2, 1966 defendant board of education entered into a written contract with plaintiff whereby it engaged him to act as principal of the high school from August 1, 1966 to June 30, 1967, at a salary of $12,000. On April 24, 1967 the board renewed plaintiff's contract for the period July 1, 1967 to June 30, 1968 at an annual salary of $13,000. Both contracts contained the following provision:
It is hereby agreed by the parties hereto that this contract may at any time be terminated by either party giving to the other sixty days notice in writing of intention to terminate the same, but that *26 in the absence of any provision herein for a definite number of days notice, the contract shall run for the full term named above.
After two attempts by the board to terminate plaintiff's 1967-1968 employment contract under the 60-day provision, each of which ended in a tie vote, the board finally mustered a majority vote of 5-3 at its meeting of June 12, 1967 and rescinded plaintiff's contract. He was paid for the 60 days of notice required, and accepted the payment, although he asserts he did not receive written notice of the intended termination.

I

AS TO THE JUDGMENT AGAINST THE BOARD OF EDUCATION
The $9600 compensatory damage award against defendant board of education was evidently arrived at by calculating plaintiff's loss of salary for the period between termination of his salary by the board and commencement of his new employment in a new school system. This suggests that the jury mistakenly treated the action as one for "breach of contract," in which that measure of damages would be applicable. But this was not a breach of contract suit. The trial judge expressly ruled that theory out of the case.
The gist of the action was one for tort, and more particularly the tort known as "malicious interference with a contractual relationship." An essential element of that tort is "malice," as it is in the case of the tort known as "malicious prosecution." But a public corporation, such as a city or other public body, by reason of its being an artificial legal entity created by law to perform limited governmental functions, cannot entertain malice, as a public corporation. A public body may be held answerable in some cases for the tortious acts of its officers and employees. But where "malice" is an essential ingredient of the tort, a city or comparable public agency is not vicariously liable for the personal malice of the city's officers or employees in *27 performing their public duties. Thus, it was held in McIntosh v. City and County of Denver, 98 Colo. 403, 55 P.2d 1337 (1936), that the city could not be held liable in a malicious prosecution suit, where malice is an essential element, even though the city's officers may have acted with malice. See, too, Somers Construction Co. v. Board of Education, 198 F. Supp. 732, 738 (D.C.N.J. 1961); 38 Am. Jur., Municipal Corporations, § 619; McQuillin, Municipal Corporations (3d ed.), § 53.62.
We deem that rationale equally true in a suit against a board of education for an alleged malicious interference with a plaintiff's employment contract. Especially so when the board is merely exercising its right given to it under the contract to terminate it. This situation does not involve a contract between a plaintiff and a third party.
Accordingly, the judgment against defendant board of education is reversed.

II

AS TO THE JUDGMENT AGAINST DEFENDANT BOARD MEMBERS
We shall assume that the evidence raised a jury question as to whether the individual board members, who voted to terminate plaintiff's employment contract under the 60-day provision therein, acted with malice in doing so. The jury's finding of malice may be inferred from the several awards of punitive damages against the individuals.
The fact remains that the defendant board members, who voted to terminate plaintiff's employment contract, had a legal right to do so, in the exercise of their legal powers as board members to vote on a board resolution concerning school affairs. In fact, it was their duty as public officials to cast their votes according to the dictates of their individual consciences for what they deemed to be in the public interest.
*28 The members were called upon to deal with a local school situation which was generating unfavorable newspaper publicity and adversely affecting school morale. Plaintiff, as school principal, was deploring the failure to adhere to his "chain-of-command" philosophy, yet he himself was not complying with that doctrine. He was rushing into print with newspaper releases and pursuing a course of direct contact with the county prosecutor to advocate a probe of school conditions. Thus, he was going over the heads of the board members and the school situation was worsening. A contest for the position of superintendent of schools appeared in the background. Plaintiff and the acting school superintendent loomed as rivals for the appointment. The board members, split as to the course to be pursued, were presented with a resolution to terminate plaintiff's contract. The board had a legal right under the contract to do so. The board members also certainly had a legal right to vote on that resolution.
The gravamen of plaintiff's complaint is that the majority acted with malice. Malice, in the exercise of one's legal right, does not as a general rule give rise to an action for money damages. For example, truth is an absolute defense in a libel or slander action. One has a legal right to speak or write the truth about another. If he utters or publishes the truth, he may not be held civilly liable for damages, even though the motivation was malicious, viz., to hurt the other's reputation. So, too, if one erects a fence on his property, not only to serve as a protective barrier but also to prevent his neighbor, whom he does not like, from looking into his rose garden, the presence of malice as a prompting factor will not establish, per se, a cause of action for money damages. Cf. 1 Am. Jur 2d, Adjoining Landowners, § 106 (1962). It has been aptly said: "Malicious motives make a bad act worse, but they cannot make that wrong which, in its own essence, is lawful." Jenkins v. Fowler, 24 Pa. 308 (Sup. Ct. 1855).
*29 By the same legal principle, the individual board members here had a legal right, in the exercise of their powers and functions as members of the board, to vote in favor of the resolution at a board meeting.
Even if we assume that there were mixed reasons for the majority's action in terminating plaintiff's contract, namely, ill-will toward plaintiff and a desire to cure a worsening school situation, it is sufficient that a valid motivation prompted the action taken. Not infrequently public employees find their jobs abolished on the ground of economy, a valid objective, but political motivation also lurks in the background. Our courts uphold the abolition so long as the valid reason of economy attends the course taken. So, too, in the instant case, the exercise of the board members' legal right to terminate plaintiff's contract for a valid reason is not converted into an actionable wrong, merely because some malice attended the exercise of the legal right.
Accordingly, the judgment against the board members for exercising their legal right is reversed.
Moreover, we note that the judgment against the individual board members was for "punitive" damages only. There was no award against them for compensatory damages. The question, then, is whether a verdict for punitive damages, standing alone, without any proper compensatory damages, is sustainable. We know that it is not unusual for a jury to return a small, relatively nominal compensatory damage allowance, and then couple it with a substantial sum by way of punitive damages. But may there be punitive damages allowed without any compensatory damages against a particular defendant?
When there is only a nominal compensatory damage award, such as the traditional six cents symbolic of the diminutive English six-pence piece, there is inherent in that small award a finding by the jury of a violation of a legal right. For example, there might have been a trespass without any substantial damage. But where no compensatory damages are awarded, not even nominal, as in the instant *30 case, there is an inference that the jury did not find a violation of a legal right, else it would have allowed at least nominal damages. A verdict for punitive damages alone suggests a punishment for malice, without more.
But malice alone, without a violation of a legal right, is not actionable. One may not be punished civilly, by an award of punitive damages only, for what he had a legal right to do and did legally. See Barber v. Hohl, 40 N.J. Super. 526, 534 (App. Div. 1956), noting that "the great weight of authority is to the effect that punitive or exemplary damages will not be awarded unless there is an independent cause of action for compensatory damages, and that, more frequently than not, an actual verdict or award of compensatory damages is held a prerequisite for the allowance of punitive damages. Annotation 17 A.L.R.2d 527, 530." As we further observed in that case, "The theory of the general rule is that the mere doing of an act with malicious motive or wrongful animus is not of itself an actionable wrong * * *." Ibid. We recognized that some authorities hold that nominal compensatory damages will suffice to support an award of punitive damages.

III

AS TO THE JUDGMENT AGAINST INDIVIDUAL DEFENDANT NON-MEMBERS OF THE BOARD
Among the individual defendants, against whom punitive damages alone were awarded, were the superintendent of schools and the mayor.
In addition to our view above, that punitive damages alone, without an award of at least nominal compensatory damages, is not legally justifiable, we find a lack of support under the law for the judgment against the superintendent of schools or the mayor on the evidence herein.
The 4-4 tie vote of the board of education on the issue of rescinding plaintiff's employment contract under the 60-day termination provision was not broken until board member *31 Peterson announced that he would change his previous negative vote to an affirmative vote for rescinding, only if the school superintendent would expressly recommend termination of plaintiff's employment as being in the public interest.
Called upon to make his recommendation, the school superintendent, acting in the performance of his school duties and upon specific request of a board member, recommended termination of plaintiff's employment contract as being in the best interests of the school system. In so doing the superintendent not only exercised a legal right, by reason of his supervisory position, but he performed a public duty mandated by a board member's request. His motivations for the recommendation may have been mixed  the public interests and his own personal feelings. The valid reason sufficed to justify the action taken.
The mayor's involvement was due to a public declaration made by him, in discussing the involved school problems, in which he referred to the fact that there was a "fester," without specific reference to any person, and the need to remove it. It was also claimed that he was the one who influenced Peterson to change his vote. Here, again, we have at most a claim of malice by a person in the exercise of his legal rights. The mayor, by virtue of his office, had a right and a duty to inquire into and express his views about a situation which was bringing the community into public disrepute. A "sore" spot concededly existed in the school community and there was adverse newspaper publicity as to alleged indiscreet goings on in the school and of plaintiff's seeking a probe by the prosecutor. Such a probe could cause the sore to "fester." Certainly, getting rid of the "fester" did not per se refer to plaintiff personally, but rather to a situation whose worsening cannot be disputed.
The alleged use by the mayor of his influence upon Peterson to change his vote, even if that was done, was not per se wrongful. The evidence does not demonstrate any impropriety on the mayor's part. Moreover, the record makes *32 manifiest that Peterson's change in his vote was based solely upon his insistence that only the recommendation of the school superintendent, expressly declaring that the best interests of the school system so required, would cause him to do so.
For the foregoing reasons, we conclude that the award of punitive damages against the individual defendants was not legally justified.
The judgment, as to all the defendants, is reversed.