148 N.J. Super. 493 (1977)
372 A.2d 1162
THE PENWAG PROPERTY CO., INC., A CORPORATION OF THE STATE OF NEW YORK AND THE PENWAG PROPERTY CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS,
v.
DAVID LANDAU, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1977.
Decided March 16, 1977.
*496 Before Judges CARTON, KOLE and LARNER.
Mr. Ronald Berman argued the cause for plaintiffs-appellants and cross respondents (Messrs. Warren, Goldberg & Berman, attorneys).
Mr. Robert Alan Vort argued the cause for defendant-respondent and cross-appellant (Messrs. Weston, Kravitz & Rank, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
Plaintiff landlord brought this action in the Chancery Division of the Superior Court seeking a judicial declaration that defendant tenant breached a commercial lease by refusing to subordinate to a mortgage and praying for possession and damages. Defendant generally denied the allegations of the complaint and counterclaimed for a declaration that his lease is valid and subsisting; that *497 he is not required to subordinate to the mortgage as sought by plaintiff, and for damages, costs and counsel fees for "malicious use of process" in prosecuting the litigation against him.
After protracted pretrial proceedings and a lengthy trial the judge rendered a full and exhaustive opinion in which he entered judgment in favor of defendant on the main issues in the litigation, declaring that defendant did not breach the lease, that it was valid and subsisting, and that the mortgage to which plaintiff sought defendant's subordination was in fact subordinate to the lease. In addition, the judge entered judgment in favor of the defendant on the third counterclaim, designated by the judge as "malicious abuse of process." A subsequent trial on damages with respect to that counterclaim resulted in a finding of compensatory damages consisting of counsel fees and costs of defense of the main action in the sum of $19,000 and punitive damages in the amount of $20,000.
Plaintiff appeals from the whole of the judgments entered on the complaint and counterclaim. Defendant cross-appeals from the quantum of damages awarded on his counterclaim.
We find from our review of the record that the judgment entered on the issues of the litigation relating to the lease and the rights of the parties thereunder, and the explicit and detailed findings of the court, are overwhelmingly supported by substantial credible evidence and the applicable law. And in view of the fact that a major factor in the trial judge's determination was his evaluation of the credibility of the actors in the controversy, his conclusion is unassailable on appeal. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974); State v. Johnson, 42 N.J. 146, 162 (1964); Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437, 446-447 (App. Div.), certif. den. 71 N.J. 503 (1976).
From our vantage point the major issue for appellate determination is the propriety of the damage award on defendant's *498 counterclaim couched in terms of malicious use of process and converted in the trial judge's opinion to an action for malicious abuse of process.
The judge based his affirmative judgment for defendant on the counterclaim on the same factual findings as those leading to the dismissal of plaintiff's complaint. In essence, these findings concluded that plaintiff and its officers contrived to dispose of the lease and tenant by creating a sham mortgage and improperly demanding that the lessee subordinate to that mortgage as part of a preconceived plan to wipe out a burdensome lease through ultimate foreclosure or threat of foreclosure of the mortgage. From these findings the judge proceeded to the conclusion that this fraudulent or improper conduct culminated in perverted use of the lawsuit herein with an ulterior and improper motive, creating a valid basis for a claim of malicious abuse of process.
Our analysis of the record and the judge's factual findings lead to the conclusion that there is no basis for denominating the cause of action as one for malicious abuse of process. The complaint sought a declaratory judgment that defendant breached the lease and a judgment for possession and damages. Regardless of the lack of merit of plaintiff's position, it was entitled to invoke the judicial process to vindicate the same, including a demand for possession of the premises. And even when the litigation is inspired by malicious or other improper motives, that in itself is not sufficient to sustain a complaint for malicious abuse of process. See Earl v. Winne, 34 N.J. Super. 605, 614 (Cty. Ct. 1955). Such a cause of action arises from the employment of legal process in a manner not contemplated by law. "Regular and legitimate use of process, though with a bad intention, is not malicious abuse of process." ADM Corp. v. Speedmaster Packaging Corp., 384 F. Supp. 1325, 1349 (D.N.J. 1974), mod. on other grounds 525 F.2d 662 (3 Cir.1975).
In discussing the difference between malicious use of process and malicious abuse of process, the Court of Errors *499 and Appeals noted in the leading case of Ash v. Cohn, 119 N.J.L. 54 (E. & A. 1937):
An action for malicious abuse of process is distinguished from an action for malicious use of process in that the action for abuse of process lies for the improper, unwarranted and perverted use of process after it has been issued while that for the malicious use of it lies for causing process to issue maliciously and without reasonable or probable cause. Grainger v. Hill, 4 Bing. N.C. 212. Thus it is said, in substance, that the distinction between malicious use and malicious abuse of process is that the malicious use is the employment of process for its ostensible purpose, although without reasonable or probable cause, whereas the malicious abuse is the employment of a process in a manner not contemplated by law. [at 58]
A more recent exposition of the elements of an action for malicious abuse of process is found in Gambocz v. Apel, 102 N.J. Super. 123, 130 (App. Div.), certif. den. 52 N.J. 485 (1968), wherein we emphasized that basic to such a cause of action is the requirement that the litigator perform further acts after the issuance of process which represent the perversion or abuse of the legitimate purposes of that process. See also, Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 151 (Ch. Div. 1951), aff'd 9 N.J. 605 (1952). In the absence of some coercive or illegitimate use of the judicial process there can be no claim for its abuse. Coercive action or bad motives or intent prior or leading to the institution of the lawsuit do not suffice to expose a plaintiff to a cause of action for malicious abuse of process.
It is manifest that the process herein was proper and regular and was used to secure a determination of a dispute between landlord and tenant  a legitimate use of the judicial process, albeit with unjust and ulterior motives. Nevertheless, since it was not utilized to accomplish an end outside the legitimate purview of the litigation itself, the gist of the cause of action is lacking. See, e.g., 1 Am. Jur. Abuse of Process, § 4 at 253; Prosser, Torts (4th ed. 1971), § 121 at 857.
Since we do not sanction the solution of legal controversies by resort to form or labels, we shall proceed to consider *500 the propriety of the counterclaim award within the framework of the cause of action of malicious prosecution, otherwise designated in civil cases as malicious use of process.
An action for malicious prosecution of a civil suit is governed in general by the same rules as those arising out of a criminal prosecution, with some significant differences. Prosser, op. cit., § 120 at 853. For a successful recovery in connection with civil litigation, the plaintiff must establish that (1) the suit was brought without probable cause, (2) it was actuated by malice, (3) it has been terminated favorably to plaintiff, and (4) plaintiff suffered a special grievance. Mayflower Industries v. Thor Corp., supra, 15 N.J. Super. at 151-152.
Factually, the counterclaim and the trial judge's findings relating to the same fit into some of the basic elements of an action for malicious use of process in that there was clearly established the absence of probable cause for the institution of the suit as well as malice. However, the co-existence of these two elements alone does not suffice to permit recovery of damages which flow solely from the defense of the action which was maliciously prosecuted.
We need not determine the question whether the assertion of a cause of action for malicious use of process by way of counterclaim in the same action which is allegedly prosecuted with malice can be sustained in view of the requirement of successful termination of the original proceeding. See Mayflower Industries v. Thor Corp., supra, 15 N.J. Super. at 148-149. Whatever ruling might be made as to compliance with this element, it is nevertheless apparent that defendant's cause of action must fail because of the absence of a special grievance. This essential element of proof of special grievance connotes damage different from and beyond the expenses and counsel fees entailed in the defense of the civil suit. As early as 1816 the Supreme Court in Potts v. Imlay, 4 N.J.L. 382, 386 (Sup. Ct. 1816), laid down the rule that:
*501 [T]his action cannot be maintained for prosecuting a civil suit in a court of common law having competent jurisdiction by the party himself in interest, unless the defendant has, upon such prosecution been arrested without cause and deprived of his liberty, or made to suffer other special grievance different from, and superadded to the ordinary expense of a defence.
To the same effect, see Bitz v. Meyer, 40 N.J.L. 252, 254 (Sup. Ct. 1878); Schneider v. Mueller, 132 N.J.L. 163 (E. & A. 1944).
Special grievance in the context of malicious civil litigation has been held to consist of the interference with a party's personal liberty or property. 3 Restatement, Torts § 677 (1938); Harper & James, Torts, § 4.8 at 326 (1956). Examples of such interference or deprivation sufficient to constitute the requisite special grievance are the appointment of a receiver, filing of a petition in bankruptcy, granting of an injunction, issuance of a writ of attachment or writ of replevin, filing of a lis pendens, issuance of an order of arrest, wrongful interference with possession or enjoyment of property, etc. See 52 Am. Jur.2d, Malicious Prosecution, § 11 at 194; Cooley, Torts (2d ed. 1888), 217-221. See also, Melvin v. Pence, 76 U.S. App. D.C. 154, 130 F.2d 423 (1942); Peckham v. Union Finance Co., 60 App. D.C. 104, 48 F.2d 1016 (D.C. Cir.1931); H.P. Rieger & Co. v. Knight, 128 Md. 189, 97 A. 358 (Ct. App. 1916); Mayflower Industries v. Thor Corp., supra, 15 N.J. Super. at 152; Meisels v. JCA Trading Corp., 189 Misc. 46, 69 N.Y.S.2d 720 (Sup. Ct.), aff'd 272 App. Div. 764, 70 N.Y.S.2d 579 (App. Div. 1947); Balsiger v. American Steel & Supply Co., 254 Or. 204, 451 P.2d 868 (Sup. Ct. 1969); Petrich v. McDonald, 44 Wash.2d 211, 266 P.2d 1047 (Sup. Ct. 1954).
Where such special grievance exists the aggrieved party is entitled to recover all damages, including the element of costs and counsel fees in defense of the action. See Mayflower, supra, 15 N.J. Super. at 175.
However, defendant, who remained in peaceful possession of the premises throughout the litigation and conducted *502 his business, was not deprived of any special personal or property right other than the expense and aggravation which accompanies all litigation. Since defendant has not shown any special grievance flowing from the institution of plaintiff's action, he has failed to establish the tort upon which his counterclaim is based, and recovery of litigation expenses or counsel fees is foreclosed. And as a corollary, the absence of the right to compensatory damages precludes an award for punitive damages. O'Connor v. Harms, 111 N.J. Super. 22, 30 (App. Div.), certif. den. 57 N.J. 137 (1970); Barber v. Hohl, 40 N.J. Super. 526, 534 (App. Div. 1956).
In the absence of the key element of a special grievance, there exists no right of reimbursement in this State for counsel fees and expenses incurred in defending a frivolous or sham lawsuit. Thus, unless a litigant's claim for such reimbursement can be brought within the four corners of a cause of action for malicious use of process, he is without remedy regardless of the lack of merit of the action he is compelled to defend or the motives or malice underlying its commencement.
The State of New Jersey adopted this deliberate policy with the revision of the court structure and its rules in implementation of the Judicial Article of the Constitution of 1947. N.J. Const. (1947) art. VI, § 2, par. 3. See State v. Otis Elevator Co., 12 N.J. 1 (1953); Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 493-496, cert. den. 344 U.S. 838-839, 73 S.Ct. 25, 97 L.Ed. 652, 653 (1952). Unless the matter is one encompassed by R. 4:42-9, no counsel fees may be allowed to any litigant.[1] Although in an unusual case such a rule may result in an injustice to one who has been exposed to substantial expenses to defend *503 a frivolous lawsuit, nevertheless our Supreme Court has determined the policy question in favor of the philosophy that our courts should be available for the assertion of a litigant's claims without the chilling effect of a substantial penalty in the event of an unfavorable decision.
In Bergen Builders, Inc. v. Horizon Developers, Inc., 44 N.J. 435, 438 (1965), a concurring opinion by Justices Jacobs and Schettino posed the suggestion that the time was ripe for a comprehensive study and revision of the rules limiting the award of counsel fees. They pointed out the adoption of the English practice in some states wherein a successful litigant is automatically entitled to recover his total defense expenses from his adversary (see Greenberger, "Appellate Review in England and United States," 1 Duq. L. Rev. 161, 166-168 (1963)), and the practice in other states where attorneys' fees are allowed against litigants who assert claims or defenses in bad faith or without reasonable cause. See Ready v. Ready, 33 Ill. App.2d 145, 178 N.E.2d 650 (App. Ct. 1961).
It may be that the entire problem of allowance of counsel fees should be restudied to determine whether our experience since 1948 has demonstrated the need for a modification of our rigid counsel fee rules. Nevertheless, such modification can only come about through a revision of our rules by the Supreme Court and not on a case by case basis by a trial court or by a court of intermediate appeal. The judgment for counsel fees and punitive damages to defendant on his counterclaim, in effect, conflicts with the policy inherent in R. 4:42-9 and cannot be sustained.
We have considered all the other contentions advanced by appellant and find them to be clearly without merit. R. 2:11-3(e) *504 (1) (C) and (E). And in view of our determination of the lack of validity of defendant's counterclaim, we need not reach the merits of his cross-appeal.
Accordingly, judgment in favor of defendant and against plaintiffs on the main action and on the declaratory relief sought in the counterclaim is affirmed. The monetary judgment in favor of defendant and against plaintiffs on the counterclaim for compensatory and punitive damages is reversed and set aside. No costs to either party.
CARTON, P.J.A.D. (dissenting in part).
I would affirm the trial judge's award to defendant of counsel fees, costs and punitive damages. In small measure these amounts would serve to compensate him for the damages suffered as the direct result of plaintiffs' outrageous use of the legal process. I would hold that the unique circumstances warranted the conclusion that a special grievance had been established and that it would be right and just to uphold these awards on the basis of the equitable and salutary principles applied in Red Devil Tools v. Tip Top Brush Co., 50 N.J. 563 (1967).
KOLE, J.A.D. (concurring).
I concur in the result reached in the opinion of Judge Larner.
I have no problem in affirming the judgment in favor of defendant on the main issues in the litigation. I also have concluded that defendant has failed to establish the kind of special grievance contemplated by the present law of this State for the recovery of compensatory or punitive damages in an action for malicious use of process.
However, in my view, the concept of special grievance should be expanded to include the unusual factual setting established by the proofs here and found by the trial judge. In the present case the totality of the circumstances evidences such a pattern of overreaching by the landlord which culminated in the civil litigation that is the basis for the claim of malicious use of process as to constitute, as the trial judge could reasonably have found on the record, an oppressive *505 use of the court as an implement of fraud against defendant, as well as a fraud on the court. It should be noted that plaintiffs' conduct evidenced by the present litigation is just part of plaintiffs' prior harassment of defendant tenant in order to terminate his lease. Earlier the tenant had to institute an action for the purpose, among others, of obtaining relief from plaintiffs' unjustifiable refusal to honor his option to renew the lease.
Such unique circumstances, I believe, should constitute a special grievance sufficient to justify an award of compensatory damages which would encompass reasonable attorneys' fees and costs involved in defending the maliciously instituted action. Judicial recognition of this type of special grievance would serve the salutary effect referred to in Red Devil Tools v. Tip Top Brush Co., et al. 50 N.J. 563, 575-576 (1967).
There the court, in a different factual context, awarded counsel fees and other litigation expenses as damages in a trade-mark injunction case as furnishing "adequate protection to the [successful] plaintiff for the future" and taking care of "its actual damages to date," as well as serving the deterrent purposes relating to a willful violation of that plaintiff's rights. It did not view such damages as trangressing on the safeguards contemplated by the counsel fee court rule. So here.
Similarly, under the foregoing unusual circumstances an appropriate award of punitive damages might well be made.
Accordingly, I see no necessity for awaiting a review by the Supreme Court of the entire problem of allowance of counsel fees where usual litigation is involved in order that justice be done to this defendant and others similarly situated.
However, as indicated, I feel constrained under existing law to concur with the conclusion of Judge Larner on this issue. It would appear that the time may have arrived for a suitable expansion of the special grievance requirement by the Supreme Court.
NOTES
[1] The case of Red Devil Tools v. Tip Top Brush Co., Inc., 50 N.J. 563 (1967), cited by the counterclaimant, is not to the contrary, for counsel fees were permitted therein as a substituted measure of damages for "ill-suited and more burdensome" damages by way of accounting and profits in a trademark infringement suit. The court noted that this included the counsel fee item as a traditional element of damage, consistent with the applicable rule, and not as a penalty against an unsuccessful litigant whose defense was untenable. Reliance on Red Devil Tools in the concurring and dissenting opinions of my colleagues is unwarranted within the context of the case at bar.