833 A.2d 633 (2003)
363 N.J. Super. 431
PORT-O-SAN CORP., Plaintiff-Respondent,
v.
TEAMSTERS LOCAL UNION NO. 863 WELFARE & PENSION FUNDS; Main Street Title, Defendants, and
Norman A. Doyle, Jr., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 2003.
Decided October 27, 2003.
*634 Norman A. Doyle, Jr., Kearny, appellant pro se.
Alison L. Galer, Bridgewater, argued the cause for respondent (Norris, McLaughlin & Marcus attorneys; Ms. Galer on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and PAYNE.
The opinion of the court was delivered by *635 PAYNE, J.A.D.
Defendant Norman A. Doyle, Jr., an attorney who was the prevailing party on a motion for summary judgment, appeals from an order of the trial court denying his motion for attorney's fees pursuant to the frivolous claims statute, N.J.S.A. 2A:15-59.1 and Rule 1:4-8(b). We reverse.
The facts follow: Port-O-San Corp. agreed to sell property located at 377 Kearny Avenue, Kearny to Skyview Realty. At the closing, held on March 15, 2001, it was disclosed that three liens affected title to the property, including a judgment lien in favor of Teamsters Local Union No. 863 Welfare & Pension Fund. In order to satisfy the title company, Main Street Title, money sufficient to cover the three liens, including $90,000 for the Teamster's judgment lien, was placed in an interest-bearing account at Valley National Bank by escrow agent Doyle, attorney for Skyview. The closing attorney for Port-O-San, Amy Alkoff Chasin,[1] consented to the escrow of funds, so long as the interest accrued to Port-O-San Corp.
In a letter to Doyle dated May 17, 2001, Pennsylvania counsel to Port-O-San sought the release of the $90,000 to Port-O-San on the ground that the Teamsters' judgment was against Easy House d/b/a Port-O-San, not Port-O-San Corp. An affidavit of the president of Port-O-San Corp. and certain supporting documents were supplied as evidence of that fact. On May 29, Doyle responded, stating that "[s]ince the title company will not insure against the ... judgment against Port-O-San, I cannot release the escrow." Doyle recommended that Port-O-San retain New Jersey counsel to move for relief from judgment pursuant to Rule 4:50 and to utilize the previously executed affidavit as support for the motion. Thereafter, on June 5, Doyle forwarded to the Teamsters' counsel the affidavit of Port-O-San's president and a warrant to satisfy judgment in Port-O-San's favor. In a note to Port-O-San's Pennsylvania counsel appended to the June 5 letter, Doyle stated:
It would appear to me that if Teamsters Local Union does not sign the Warrant of Satisfaction, that it would be up to Port-O-San to proceed by motion to have the judgment vacated as against them on the grounds that they were never a proper defendant to begin with.
This is a problem that Port-O-San should have taken care of on its own some time ago and the remedy should not be foisted on me or my client as innocent purchasers.
However, to the extent we can assist in resolving this matter, I am doing so.
The Teamsters refused to sign the warrant, and the $90,000 remained in escrow as a result.
Port-O-San did not file the motion suggested by Doyle. As stated by Pennsylvania counsel, while that course might, "in fact, be one alternative, it is probably not the only alternative available to my client." Instead, Port-O-San retained the law firm of Norris, McLaughlin & Marcus, to file suit on Port-O-San's behalf. Since that time, a member of the firm (litigation counsel), has prosecuted Port-O-San's action throughout its course, including this appeal.
A complaint filed by Port-O-San's litigation counsel on August 20, 2001 against the Teamsters, Main Street Title and Doyle alleged Main Street's wrongful requirement that $90,000 be placed in escrow, the designation of Doyle as escrow agent, and the Teamsters' wrongful failure to provide a warrant of satisfaction thereby removing *636 the encumbrance on the property. Causes of action were asserted seeking damages and other relief against all defendants on grounds of slander of title, tortious interference with prospective economic advantage, conversion, and unjust enrichment.
Doyle, regarding the claims against him to be baseless, perfected his rights under the frivolous claims statute and Rule 1:4-8 by correspondence to Port-O-San's litigation counsel dated September 14, 2001 and a counterclaim against Port O San filed on September 20. Doyle's letter stated in relevant part:
The basis for my notice is that I, at the time of closing, was attorney for Skyview Realty, and had an obligation to ensure that my client received clear title to the property without any encumbrances.
The judgment against Port-O-San, clearly is an encumbrance on the title, and justified the title company in refusing to insure against the possible lien on the property.
A cursory check with your own attorney who represented Port O San at the closing will disclose that she consented to the escrow until said lien could be removed.
Evidently there is difficulty in removing the lien, due to the failure of the plaintiff, Teamsters Local Union No. 863, to respond to your inquiries.
However, it is obvious that I have no connection, legal or factual, with the Teamsters Union.
I have not slandered your title. I have not been unjustly enriched, I have not interfered with any economic advantage of yours, nor have I converted any of your funds.
In his September 14 letter, Doyle offered to place the funds in court. His offer was accepted by Port-O-San's litigation counsel as a condition to dismissal of the suit against him. However, Doyle subsequently determined that the transfer would be improvident, since it would be contrary to the terms of the escrow agreement, and that dismissal of suit was an inadequate remedy, since it would not dispositively resolve in Doyle's favor the claims against him, most particularly, that of conversion. He thus did not follow up on the offer, and matters continued.
An answer to the counterclaim was filed by Port-O-San on October 11, 2001, consisting of general denials, the assertion that Doyle "did not act properly in refusing to close title," and separate defenses based upon failure to state a claim, performance of all obligations by plaintiff, estoppel, unclean hands, waiver and laches. Additionally, Port-O-San reserved the right to assert that Doyle's counterclaim was frivolous.
Summary judgment was granted to Doyle by order dated May 10, 2002 when it was shown, without contradiction, that the escrowed funds remained in an account at Valley National Bank. At the hearing on the motion, Port-O-San's argument against summary judgment was based in large measure upon the evidentially unsupported assertion that Port-O-San's closing counsel had not consented to the creation of the escrow. The following colloquy occurred on that subject:
THE COURT: First of all, do we have anything from the counsel at the closing to say I didn't agree to this escrow?
[LITIGATION COUNSEL]: No.
* * *
THE COURT: ... It would have been real easy, I presume, for you, if you felt this really wasn't by consent, to get a certification from their prior attorney saying there wasn't any agreement.

*637 Or when I have here a person who was there telling me there was. So I have some competent evidence from which I could find that.
[LITIGATION COUNSEL]: I think we move on ... to a different issue.
Additionally, litigation counsel took the position that because the Teamster's judgment was not in fact against Port O San Corp., the escrowed funds were wrongfully withheld. She also claimed fault on the part of Doyle in rescinding his offer to place the funds in court. No legal or factual support was demonstrated for any of the legal theories of liability asserted against Doyle in the complaint. The following captures the tenor of the argument:
THE COURT: ... I'm not even hearing any opposition to the summary judgment, other than we don't know that we agree to put the money into escrow.
[LITIGATION COUNSEL]: Well, I want the record to be clear. There's there's opposition to the summary [judgment].
THE COURT: What's the opp[osition]?
[LITIGATION COUNSEL]: The opposition is ... that this judgment is not entered against Port-O-San Corporation.
The court then ruled that there "was no proof that there was a conversion or a tortious interference, or anything that Mr. Doyle was accused of in this case." Despite this ruling, the trial judge refused to award as a sanction under Rule 1:4-8(d) the requested attorney's fees of $4,092, holding that he could not find that the plaintiff's action "was maliciously done."
That is not a fully accurate expression of the "bad faith" standard established by statute and court rule. The statutory standard applicable to parties permits sanctions if: "The complaint ... was commenced, used, or continued in bad faith, solely for the purpose of harassment, delay or malicious injury." N.J.S.A. 2A:15-59.1b. See also McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561, 626 A.2d 425 (1993)(construing statute). Rule 1:4-8(a), applicable to attorneys, provides that an attorney's signature on a pleading constitutes that attorney's certification that the pleading is not being presented for an improper purpose; that the claims are warranted by existing law or by a non-frivolous argument for the law's extension, modification, reversal or for the establishment of new law; and that the factual allegations therein have evidentiary support. We have construed paragraph (d) of that rule to authorize sanctions in instances in which the rule has been violated in bad faith. See J.W. v. L.R. 325 N.J.Super. 543, 548, 740 A.2d 146 (App. Div.1999); K.D. v. Bozarth, 313 N.J.Super. 561, 574, 713 A.2d 546 (App.Div.1998), certif. denied, 156 N.J. 425, 719 A.2d 1023 (1998) (both applying the McKeown-Brand statutory bad faith standard to a R. 1:4-8 proceeding).[2]
We regard "malice" (explicit in N.J.S.A. 2A:15-59.1b and implicit in Rule 1:4-8(a)) and "bad faith" to be related, but not necessarily identical concepts. Dictionary definitions of malice require an animus that is lacking in the concept of bad faith. However, the Supreme Court has held when describing the elements of tortious interference with business, that malice, an element of the tort, "`is not used in *638 the literal sense requiring ill will toward the plaintiff,'" but instead "malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." Printing Mart-Morristown v. Sharp Electronics, 116 N.J. 739, 751, 563 A.2d 31 (1989) (quoting Restatement (Second) of Torts Chapter 37 at 5 (introductory note) and citing Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 563, 117 A.2d 889 (1955)). We adopt the latter definition when construing the term malice in the present context, but are uncertain of the meaning ascribed to the term by the trial judge. We therefore cannot determine if he used the concept in the sense that we have found to be appropriate.
Moreover, we note that the bad faith necessary for sanctions here can be demonstrated, as stated in N.J.S.A. 2A:15-59.1b, if litigation was used in bad faith "solely for the purpose of harassment, delay or malicious injury." The trial judge did not address either harassment or delay as a motivation for the conduct that occurred in this matter.
Here, it is clear that the complaint against Doyle lacked both factual and legal basesdeficiencies known to litigation counsel (and, perhaps, to Port-O-San) at the outset. Indeed, at oral argument on appeal, litigation counsel agreed that Doyle would be subject to a suit for legal malpractice if he were to have released funds from escrow before title had been cleared. She recognized that the parties to the lien had no relationship to Doyle or to his client. She conceded that there was no legal support for her position that it was wrong for Doyle to hold the $90,000 in escrow. And she admitted that she had instituted suit against Doyle as a means of pressuring his client to accept the property with a cloud on the title.[3]
In these circumstances, we find that litigation counsel filed suit in bad faith and for an improper purpose. She joined Doyle as a party under specious theories of liability when the absence of such liability was manifest. See Hreshko v. Harleysville Ins. Co., 337 N.J.Super. 104, 110-11, 766 A.2d 776 (App.Div.2001) (holding that signature rule may be violated by joinder of a party known to have no liability). Cf. Somerset Trust Co. v. Sternberg, 238 N.J.Super. 279, 569 A.2d 849 (Ch.Div.1989) (awarding fees under authority of frivolous claims statute when mortgagor admitted to the absence of any legal basis for answer in foreclosure proceeding). She admitted that she did so to obtain unwarranted and legally unjustifiable concessions from Doyle's client.[4] Thus, a violation of the signature rule by litigation counsel has been demonstrated unequivocally.
We lack evidence upon which to determine whether a similar statutory violation exists on the part of Port-O-San as the result of bad faith conduct on its part, or whether it relied in good faith on the advice of litigation counsel in permitting the complaint at issue to be filed and opposing Doyle's request for its withdrawal. See McKeown-Brand, supra, 132 N.J. at 558-60, 563, 626 A.2d 425 (finding the statute to be constitutional as applied to "a party who files an action `in bad faith, solely for the purpose of harassment, delay or malicious injury ...'"); Savona v. DiGiorgio Corp., 360 N.J.Super. 55, 63, 821 A.2d 518 (App.Div.2003) (distinguishing between the responsibility of a lawyer under *639 Rule 1:4-8 and that of a client under N.J.S.A. 2A:15-59.1).
We recognize that both the frivolous claims statute and the signature rule must be interpreted restrictively so as not to discourage creative advocacy or access to the courts. McKeown-Brand, 132 N.J. at 560-62, 626 A.2d 425; DeBrango v. Summit Bancorp, 328 N.J.Super. 219, 226-27, 745 A.2d 561 (App.Div.2000); Ellison v. Evergreen Cemetery, 266 N.J.Super. 74, 85, 628 A.2d 793 (App.Div.1993). Nonetheless, we find nothing objectively reasonable in asserting the claims against Doyle that were set forth in Port-O-San's complaint against him. In particular we, like Doyle, find the accusation of conversion to have been unconscionable in circumstances in which the creation of an escrow was required in order to convey property encumbered by liens, no evidence of objection by Port-O-San's closing attorney to its creation has been presented, the funds were properly deposited by Doyle in an interest bearing account, and proof that they remained in that account has existed throughout the litigation. "Conversion consists of the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." Commercial Ins. Co. of Newark v. Apgar, 111 N.J.Super. 108, 114-15, 267 A.2d 559 (Law Div.1970). In this case, the property in question consisted of funds held in trust. Misappropriation of trust funds almost invariably results in disbarment. In re Wilson, 81 N.J. 451, 453, 409 A.2d 1153 (1979). Nonetheless, such conversion is what Port-O-San's litigation counsel alleged, not for any legitimate purpose, but simply to pressure Doyle to advise his client to act in a manner that was manifestly contrary the law regulating encumbrances and to the client's economic interest. We find such conduct, which demonstrates a blatant disregard for litigation's proper uses, to warrant sanction.
At oral argument, Doyle urged us to exercise our original jurisdiction pursuant to Rule 2:10-5 in order to enter an award of attorney's fees in his favor in the amount of $4,090, so that Port-O-San and/or its litigation counsel could be spared further sanctions accruing as the result of a remand. Doyle expressly waived his claim to fees on appeal if we were to do so. See Khoudary v. Salem Cty. Bd. of Soc. Serv's, 281 N.J.Super. 571, 576, 658 A.2d 1317 (App.Div.1995) (recognizing that the frivolous claims statute authorizes payment of "all" attorneys' fees, including those incurred on appeal). But see Rule 1:4-8(d) (sanctions may consist of payment of some or all of movant's reasonable attorneys' fees and other expenses incurred as a direct result of the violation). However, Port-O-San's litigation counsel opposed the application on the ground that Doyle's fee request was unreasonable.[5] Since factual issues remain as to the liability of Port-O-San for sanctions pursuant to N.J.S.A. 2A:15-59.1b and as to the amount of fees due from it and/or litigation counsel, we remand the case for imposition of sanctions on the appropriate parties as determined by the trial court.
Reversed and remanded.
NOTES
[1] The conduct of Ms. Chasin is not the subject of any application for sanctions.
[2] See also RPC 3.1, which provides that a lawyer "shall not bring ... a proceeding, nor assert or controvert an issue therein unless the lawyer knows or reasonably believes that there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."
[3] Port-O-San finally obtained summary judgment against the Teamsters by order dated January 24, 2003.
[4] If litigation counsel had thought Doyle's presence in the suit was necessary as the result of his position as escrow agent, he could have been named as a nominal party.
[5] We note that the rule does not prohibit an award of attorneys' fees to attorneys appearing pro se. Brach, Eichler, P.C. v. Ezekwo, 345 N.J.Super. 1, 17, 783 A.2d 246 (App.Div.2001)(dictum).