70 A.3d 768

JOSEPH B. BARATTA, M.D., F.A.C.S., ELYSE KREMINS, AND BURTON A. SCHLECKER, M.D., F.A.C.S., PLAINTIFFS, v. DEER HAVEN, LLC, HAVEN DEVELOPMENT COMPANY, LLC, SALAH MEKKAWY, AND SAM SHAHAR, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided September 8, 2011—Filed July 12, 2013.

*Paul H. Schafhauser* for plaintiffs (*Herrick, Feinstein, LLP*, attorneys).

*Kimberly L. Russell* for defendants (*Kaplan, Stewart, Meloff, Reiter & Stein, P.C.*, attorneys).

ROTHSCHILD, J.S.C.

The court has before it a motion for reconsideration of its order granting sanctions against defendants under *Rule* 1:4–8 and *N.J.S.A.* 2A:15–59.1 for their continued assertion of a counter-

claim. The case presents novel questions as to whether it is possible under New Jersey law for defendants to assert a counterclaim against plaintiffs because plaintiffs sued to recoup their investment in defendants' enterprise.

## I. Introduction

Plaintiffs are two doctors, and a lawyer who is the wife of one of the doctors; all three plaintiffs live and work in New Jersey. They invested $1.9 million in a Pennsylvania real estate venture in mid–2004, eventually becoming limited partners. Plaintiffs filed suit in May 2009 because they lost their entire investment, and because they believed the general partners had usurped certain partnership opportunities. On December 16, 2009, the Assignment Judge of this court allowed defendants to file a counterclaim, which asserted that plaintiffs' suit constituted (a) corporate waste, (b) a breach of fiduciary duty, and (c) a breach of the covenant of good faith and fair dealing. On January 6, 2010, defendants filed that counterclaim, seeking damages in each of the three counts for "not less than one million dollars, plus pre-judgment interest." Since then, defendants' pleadings were amended twice, but the counterclaim remained essentially the same. Plaintiffs sent defendants three (virtually identical) letters demanding that the counterclaim be withdrawn, but defendants refused each time.

After the close of discovery, the parties moved and cross-moved for summary judgment on the merits. The court dismissed the entire counterclaim, as well as three of plaintiffs' claims.

Plaintiffs then moved under *N.J.S.A.* 2A:15–59.1 and *Rule* 1:4–8 [1] for sanctions, attorney's fees, and costs on the basis that the

---

[1] *N.J.S.A.* 2A:15–59.1 reads in pertinent part:

a.(1) A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds ... that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous....
b. In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find ... that either:

counterclaim constituted frivolous litigation. The court granted the motion, and now faces a motion for reconsideration.

## II. The Motion for Reconsideration

At the outset, the court agrees with defendants that it should decide that motion on the merits, as it indicated at oral argument that defendants could move for reconsideration if they were able to find a case wherein an investor was successfully sued for filing a lawsuit to recover his or her investment. Although it is not clear to this court that defendants have found such a case, it would be unfair to defendants who made such an attempt not to address their motion on the merits.

Defendants argue that: (a) the Assignment Judge order allowing them to file the counterclaim immunizes them from liability; (b) plaintiffs' status as limited partners gave them a fiduciary duty not to harm the partnership in any way; (c) even if plaintiffs had a right to sue, they did not have a right to sue as soon as they did, because with more time, and no lawsuit, the defendants (who also lost money) could have rescued the enterprise; (d) plaintiffs had no standing to file their motion for sanctions because three of plaintiffs' thirteen counts (consumer fraud, fraudulent conveyance, and federal securities law) were dismissed on summary judgment; and (e) given the entire controversy rule in New Jersey, defendants had to file their counterclaim or be forever barred.

---

(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or

(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

Rule 1:4–8(a)(1) and (2) state that:

fees may be awarded if the opposing party's papers were presented "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation ...", and such papers were not "warranted by existing law or by a non-frivolous argument for the extension ... of existing law ..."

■ As to the first argument, the Assignment Judge was correct to allow the counterclaim under the liberal standards of *Rule* 4:9–1. Discovery could have revealed that the counterclaim was viable. For example, depositions may have demonstrated that (1) defendants alerted plaintiffs to sensitive negotiations with prospective lenders and asked plaintiffs to forego suit until the negotiations bore fruit, (2) defendants offered plaintiffs a stand still agreement to protect plaintiffs' interests during that time period, and (3) defendants pledged not to transfer, or borrow against, any of the property in question during that time period. Discovery did not show that this happened.

After discovery revealed nothing other than the obvious fact that plaintiffs' lawsuit cost defendants legal fees and helped speed the demise of the already extremely fragile enterprise [2], it became clear that there was nothing to the counterclaim but an attempt to gain litigation leverage. Further, there are no cases holding that the grant of a *Rule* 4:9–1 motion serves as court approval of the substance of the amended pleading.

■ Defendants' second argument is that plaintiffs' status as partners may differentiate them from the general class of disgruntled investors.[3] *See Heller v. Hartz Mountain Industries, Inc.,* 270 *N.J.Super.* 143, 150, 636 *A.*2d 599 (Law Div.1993) ("each partner stands in a fiduciary relationship to every other partner.") On the other hand, when the court made the above-quoted statement in *Heller* it was referring to the fiduciary duty imposed upon

---

[2] Obviously, all suits against financially fragile enterprises deplete the defendants' assets and can lead to dissolution of the enterprise. To make actionable a suit against a financially fragile company because it has the inevitable effect of weakening the company would make little sense.

[3] Plaintiffs deny they were limited partners during the bulk of the years in question. They argue that since one of the defendants filed a tax return stating that he is a fifty percent partner, and a second defendant did likewise, this left "no partnership interest allocable to any other person." On the other hand, it appears that by 2008 two of the plaintiffs were denominated as "partner". Thus, the court will ascribe to plaintiffs whatever fiduciary duties partners assume.

Hartz Mountain Industries, the ninety percent owner and managing partner of the real estate partnership at issue. The court emphasized that:

More significantly for the present case, where a managing partner controls the partnership's business, that partner is held to the "strictest possible obligation" to his or her copartner since the affairs of all partners are delegated to the manager without interference or monitoring on the part of the non-managing partners. [*Id.* at 151, 636 *A.*2d 599.]

Defendants' argument that plaintiffs had a fiduciary duty to them would have been plausible if plaintiffs were the majority owners of the enterprise rather than mere passive minority investors. The law has always been clear in New Jersey that the fiduciary duty rests on the majority owners. *See Bostock v. High Tech Elevator Ind.,* 260 *N.J.Super.* 432, 444, 616 *A.*2d 1314 (App.Div.1992) ("the law imposes a fiduciary duty upon the majority requiring it to act with utmost good faith and loyalty in transacting corporate affairs") (internal quotation marks omitted); *McKelvey v. Pierce,* 173 *N.J.* 26, 57, 800 *A.*2d 840 (2002). ("The essence of a fiduciary relationship is that one party place trust and confidence in another who is in a dominant or superior position.") (internal citation omitted); *In re Stroming's Will,* 12 *N.J.Super.* 217, 224, 79 *A.*2d 492 (App.Div.1951) ("essentials [of confidential relationship] 'are a reposed confidence and the dominant and controlling position of the beneficiary of the transaction'" finding no dominance and therefore ruling for the defendant.); *Blake v. Brennan,* 1 *N.J.Super.* 446, 453, 61 *A.*2d 916 (Ch.Div.1948) ("the test is whether the relationship between the parties was of such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other ..." finding insufficient dominance existed to place a fiduciary duty on the defendant); *F.G. v. MacDonell,* 150 *N.J.* 550, 563, 696 *A.*2d 697 (1997) and *D'Arcangelo v. D'Arcangelo,* 137 *N.J. Eq.* 63, 67, 43 *A.*2d 169 (Ch.Div.1945). ("In general, there is no fiduciary relation among stockholders. Those who hold majority of the stock can vote as their own interest dictates without regard to the conflicting interest of the minority ... there is a fiduciary

relation between the directors and the stockholders . . .") (internal citations omitted). Plaintiffs herein were neither majority owners nor directors, nor in any position of dominance. They, therefore, were not bound by fiduciary duty not to sue.

As "proof" that "majority partners or majority shareholders have brought claims against minority partners or shareholders," defendants cite *Dresden v. Willock*, 518 *F*.2d 281 (3d Cir.1975), and *Trifad Entertainment, Inc. v. Brad Anderson*, 306 *Mont*. 499, 36 *P*.3d 363 (2001). Defendants state that in *Dresden* "majority shareholders filed counterclaim against minority shareholders based upon the latter's fiduciary duty." Actually, that opinion does not benefit defendants at all. The so-called minority share-holder in *Dresden* had, by virtue of a one-sided agreement "the equivalent corporate power of a majority stockholder." *Dresden, supra*, 518 *F*.2d at 283. Dresden was a veteran New York attorney dealing with a young, inexperienced college drop-out who was his client in a divorce case and in the transaction in question. The court emphasized that Dresden's status as defendant's coun-sel, as well as his role as a director and officer role as the defendant's attorney, made him a fiduciary:

There is no question that Dresden's initial role in the project was that of a fiduciary:

. . . . . . . .

That Dresden may have held another position . . . did not divest him of the fiduciary obligations incident to his role as an attorney.

. . . . . . . .

Dresden, functionally at least, was not only a stockholder in and an attorney for the corporation, but a director and officer as well. . . . Moreover, as a result of his experience in law and business and [defendant's] corporation inexperience, his was the responsible hand on the corporate tiller and that [defendant] so regarded him.

. . . . . . . .

His fiduciary obligation as an attorney, as an officer and director, and as a stockholder in a closely held corporation, required a higher standard of conduct.

> The change of positions ... directed that Dresden as a fiduciary give [defendant] a thorough explanation as a minimum requirement of fair dealing in these circumstances.
>
> . . . . . . . .
>
> The proper questions is whether a party to a contract who in a fiduciary capacity as an attorney, an officer, a director, and a minority stockholder in a closely held corporation, induced majority stockholder to execute it without fully and fairly disclosing ...
>
> Since the undisputed facts establish that Dresden, the plaintiff-fiduciary ...
>
> Dresden was more than a mere agent. As an officer and director, and a legal counsel, he occupied a fiduciary relationship of the highest order ...
>
> [*Id.* at 284–90 (emphasis added).]

If anything, *Dresden* demonstrates that passive minority shareholders do not owe a fiduciary duty to the majority. Why else would the court go out of its way to emphasize and re-emphasize that Dresden held the equivalent power of majority stockholder, and was the attorney for the enterprise and its young defendant as well as a director and offices of the enterprise? To argue that *Dresden* establishes the right of "majority shareholders [to] file counterclaim [ ... ] against minority shareholders based upon the latter's fiduciary duty" is simply not accurate.

The other case defendants cite for the proposition that a minority partner may be "held liable to majority shareholders for breach of fiduciary duty and conversion of assets." *Trifad, supra,* 36 *P.*3d 363. In *Trifad,* the corporation had two shareholders; the minority shareholder, Brad Anderson, sold to himself the principal asset of the corporation, fifteen pool tables, and did not disclose that fact to the other shareholder (who was then in jail). The Montana Supreme Court, like the Third Circuit in *Dresden,* emphasized that Anderson was an officer and director:

> Brad, an officer and director of Trifad sold, to himself, substantially all of Trifad's property
>
> . . . . . . . .
>
> Brad, as Trifad's director and officer, did not appropriately discharge his duties when he converted Trifad's assets ... corporate officers and directors must discharge their duties in good faith.
>
> [*Id.* at 369–71.]

*Dresden* and *Trifad* demonstrate that for a minority investor to have a fiduciary duty to the majority, he or she must be a director, officer, or attorney for the enterprise. It appears there are no cases in America standing for the proposition that a mere minority investor is saddled with a fiduciary duty to the majority.[4]

■ Defendants' third argument is that plaintiffs sued too soon. Defendants alleged that the documents plaintiffs signed did not allow them to recover any monies until units in the real estate development were sold:

> Plaintiffs were aware at the time that they filed suit that they were not entitled to be repaid the amount of their investment in Deer Haven ... Plaintiffs knew that they were not entitled to repayment because the Development Company had not yet sold any units and the sale of units was an express condition precedent to the repayment of Plaintiffs' investment ... Plaintiffs knew or should have known that partners are not entitled to any distribution of partnership assets unless agreed by the partners and only to the extent that such a distribution would not render the partnership insolvent or constitute a fraudulent transfer. Plaintiffs further breached the implied covenant of good faith and fair dealing by injuring Deer Haven's right to receive the fruit of Plaintiffs' contract with Deer Haven because at a minimum, Plaintiffs were obligated to keep their money invested in Deer Haven until units were sold.

As noted earlier, the investment was made in 2004, and plaintiffs filed suit in 2009. Since the suit contained numerous counts and theories (breach of contract, securities law violations, consumer fraud violations, tortious interference, breach of fiduciary duty, fraud, unjust enrichment, constructive trust, fraudulent conveyance to defendants, etc.) plaintiffs had innumerable statute of limitations considerations in deciding when to sue. Indeed, defendants' first affirmative defense, after the standard "the complaint fails to state a claim upon which relief can be granted," is "plaintiffs' claims are barred by the statute of limitations." The sixth defense asserts three other time-related defenses: waiver, estoppel and laches. (In fairness to defendants, the court notes

---

[4] It is noteworthy that defendants' very competent counsel were able to find only two cases supposedly supporting their position, and that the two cases, emanating from the Virgin Islands and Montana, actually stand for the opposite proposition.

that the eighth defense reads "Plaintiffs' claims are not ripe.") In defendants' motion for summary judgment they asserted:

> Plaintiffs' claims are barred because their claims were brought more than two years after the date of their investment and more than two years after Plaintiffs knew or should have known of the existence of a potential cause of action against Defendants. Plaintiffs' own testimony is clear that Plaintiffs had sufficient information and 'warnings' and should have known the nature of the facts about their investment more than two years before June 7, 2009 (the date the plaintiffs brought their securities claims).

> . . . . . . . .

> Plaintiffs' claims under the Uniform Securities Act are barred as a matter of law by the Act's two year statute of limitations.
>
> [*See N.J.S.A.* 49:3–71(8).]

With so many timeliness problems, the court cannot conclude that plaintiffs should have waited to sue. Indeed, by waiting any longer to sue, plaintiffs' counsel would have been violating his duty of vigorously representing his clients.

Neither of defendants' fourth or fifth arguments (plaintiffs had no standing to seek sanctions because the court dismissed three of their thirteen counts, and defendants had to file their counterclaim because of the entire controversy doctrine) merit discussion in this opinion. Indeed, if the entire controversy defense were accepted, counterclaims would be immunized under both the statute and rule even though the statute explicitly mentions counterclaims and the rule explicitly mentions pleadings.

 Two general principles bear repeating herein. First, the statute and rule must be interpreted restrictively. *See Shore Orthopaedic Group v. Equitable Life Assur. Soc. of U.S.*, 397 *N.J.Super.* 614, 628, 938 *A.*2d 962 (App.Div.2008). Accordingly, if the court found any precedent approving a counterclaim such as that asserted herein, it would not award sanctions. Second, neither the statute nor the rule requires "ill will toward the plaintiff." Rather, the statute and rule are satisfied if the action was filed "solely for the purpose of harassment, delay, or malicious injury." *Port–O–San Corp. v. Teamsters*, 363 *N.J.Super.* 431, 438, 833 *A.*2d 633 (App.Div.2003). In the present case, the court is not

certain that defendants thought their counterclaim would cause "delay." On the other hand, the court believes strongly the counterclaim was filed for litigation leverage—to force the plaintiffs to expend more money, while also serving as a potential trade-off on settlement talks, since a counterclaim seeking $1,000,000 could alarm the three individuals who are the target of that counterclaim. Furthermore, the court is convinced the counterclaim does not have any "reasonable basis in law." *See N.J.S.A.* 2A:15–59.1(b)(2).

An analogy to the litigation privilege may be useful. The court is aware that the litigation privilege has historically been applied only to statements made in litigation. *See Hawkins v. Harris,* 141 *N.J.* 207, 221–22, 661 *A.*2d 284 (1995). Thus, it is not directly applicable to the motion before the court. Nevertheless, the court notes the public policy behind the litigation privilege, as explained by Chief Justice Hughes, then sitting in the Appellate Division. He wrote that it is important that "persons in such circumstances be permitted to speak and write freely ... this sense of freedom [is] indispensable to the due administration of justice." *Fenning v. SG Holding Corp.,* 47 *N.J.Super.* 110, 117, 135 *A.*2d 346 (App.Div.1957). It would seem illogical for plaintiffs to have absolute immunity in the content of their allegations against defendants, but be subject to liability for the fact that they made the allegations.

The analogy to the litigation privilege leads the court to briefly address the Appellate Division decision in *Rabinowitz v. Wahrenberger,* 406 *N.J.Super.* 126, 966 *A.*2d 1091 (App.Div.2009). In *Rabinowitz* an attorney who asked arguably aggressive questions in a deposition was sued. *Id.* at 132, 966 *A.*2d 1091. After the trial court dismissed the suit on the basis that the litigation privilege protected the attorney, the attorney moved for an award of counsel fees under *Rule* 1:4–8. *Id.* at 135, 966 *A.*2d 1091. The trial court granted the fees and the Appellate Division affirmed, concluding that the defendant attorney "would have been derelict in her duties to her own client if she had not pursued the

questions." *Ibid.* Similarly, in this case, plaintiffs' counsel would have been derelict in his duties to his own client if he had not pursued the lawsuit to recover the $1.9 million lost in the venture.

Also, the exceedingly competent attorneys for defendants herein "knew, or should have known" the laws allowing investors to sue when they lose their investment and believe they had been mistreated. *Gooch v. Choice Entertaining Corp.*, 355 *N.J.Super.* 14, 16, 20, 809 *A.*2d 154 (App.Div.2002) (upholding a legal fee award when pro se attorney filed a third party complaint which "alleged in essence that statements made by [another party] in the course of the litigation defamed him; attorney as an officer of the court, knew, or should have known, the law regarding immunity.")

Defendants cite *Penwag Property Co., Inc. v. Landau,* 148 *N.J.Super.* 493, 372 *A.*2d 1162 (App.Div.1977), and *Fielder Agency v. Eldan Construction Corp.,* 152 *N.J.Super.* 344, 377 *A.*2d 1220 (Law Div.1977), for the proposition that New Jersey courts do not summarily dismiss counterclaims in abuse of process cases. In *Penwag, supra,* 148 *N.J.Super.* at 496, 372 *A.*2d 1162, a landlord brought an action against its tenant alleging that the tenant breached a commercial lease by refusing to subordinate to a mortgage. The defendant tenant counterclaimed, alleging malicious use of process. *Id.* at 497, 372 *A.*2d 1162. The trial court entered a judgment in favor of the defendant on a counterclaim, but the Appellate Division reversed. *Ibid. Penwag* is not useful to the defendants because it preceded the passage of *N.J.S.A.* 2A:15–59.1 and *Rule* 1:4–8. Indeed the court stated:

> It may be that the entire problem of allowance of counsel fees should be restudied to determine whether our experience since 1948 has demonstrated the need for a modification of our rigid counsel fee rules. Nevertheless, such modification can only come about through a revision of our rules by the Supreme Court ... [*Id.* at 503, 372 *A.*2d 1162.]

In the *Fielder* case, a real estate broker sued a vendor to recover commissions, and the vendor counterclaimed for malicious use of process. *Fielder, supra,* 152 *N.J.Super.* at 346, 377 *A.*2d 1220. A jury found against the plaintiff broker. On the counterclaim, the court held that in the absence of "special damages," the

vendor was not entitled to recover. *Id.* at 352, 377 *A*.2d 1220. Once more, this case is not helpful to defendants because it also preceded the passage of the statute and rule.

The court does not mean by today's decision that no minority investor who files a suit to recover monies can ever be subject to a viable counterclaim. There are at least four instances where a counterclaim could possibly be maintainable: (a) where the contract documents forbid litigation, relegating the investor to an arbitral or other forum; (b) where the defendants offer the investors a stand-still agreement, pursuant to which time does not run on any cause of action (and all possible remedies of the investor remain viable); (c) where the minority shareholders, like the minority shareholders in *Dresden* and *Trifad,* are actually attorneys for and/or directors and officers of the enterprise; and (d) where the trial court dismisses all claims of the investors as being meritless. None of these possible scenarios can save defendants herein.

The motion for reconsideration is denied. Plaintiffs are entitled to sanctions under *N.J.S.A.* 2A:15–59.1 and *Rule* 1:4–8.